RICHARDS et al. v. WEBER COUNTY IRR. DIST. et al.

No. 4120.   Decided April 21, 1924.   (225 Pac. 600.)

1.   MANDAMUS—HELD NOT TO LIE TO COMPEL IRRIGATION DISTRICT TO
     PAY NOTES.   Mandamus does not lie to compel an irrigation
     district, to pay notes executed to plaintiff for services, where
     district set up defenses to notes; an action on notes constitut-
     ing a speedy and adequate remedy at law.

2.   MANDAMUS—WILL NOT ISSUE WHERE ANOTHER SPEEDY AND ADE-
     QUATE REMEDY EXISTS.   Mandamus will not issue where there
     is another plain, speedy, and adequate remedy.

3.   MANDAMUS—NOT FAVORED WHERE REMEDY IN USUAL COURSE OF
     LAW EXISTS.   Mandamus for enforcement of a claim is not fa-
     vored, where a remedy in usual course of law exists.

Mandamus by Charles C. Richards and William J. Mitchell,

under firm name of Richards & Mitchell, against the Weber County Irrigation District, and others.

ALTERNATIVE WRIT QUASHED, and peremptory writ denied.

*De Vine, Howell, Stine & Gwilliam* and *A. W. Agee,* all of Ogden, for plaintiffs.

*A. G. Horn,* of Ogden, for defendants.

FRICK, J.

The plaintiffs filed their application in this court praying for an alternative writ of mandate against the Weber County irrigation district, a corporation, and against Edward M. Conroy, Frederick L. Foy, and George A. Fuller, who constitute the board of directors of said district.

The complaint is very long, and we shall state as briefly as possible the salient facts upon which plaintiffs rely.

The application for the writ is based upon three promissory notes of $2,500 each. We here insert one of the notes, which reads as follows:

"$2,500.00.                    Ogden, Utah, December 23, 1922.

"On or before six months after date, for value received Weber County irrigation district, a public corporation of the state of Utah, hereby promises to pay to the order of Richards & Mitchell, at the office of said district in Ogden, Utah, the sum of two thousand five hundred dollars ($2,500.00), in United States gold coin, together with interest thereon from date until paid at the rate of seven per cent. per annum, payable at maturity.

"In case action is instituted to collect this note or any part thereof, Weber County irrigation district also promises to pay a reasonable sum as attorney's fees. This obligation is within the legal debt limit of said irrigation district.

"In testimony whereof, the said irrigation district has caused this note to be executed and delivered under its corporate name and seal by its president and secretary thereunto expressly and specifically authorized and directed by a resolution of its board of directors duly adopted by a majority of said board at a meeting thereof duly called and held December 23, 1922. Weber County Irrigation District, by D. D. McKay, President of the Board of Directors, by Louis Wangsgard, Secretary of the Board of Directors.

[Corporate Seal Weber County Irrigation District.]" U. S. Internal Revenue Stamps, fifty cents, duly canceled.

The notes, it is alleged were executed by the officers of said district and delivered to the plaintiffs for services rendered, which it is alleged had been duly audited and allowed. It is also alleged that said notes were executed pursuant to chapter 73, § 26, Laws Utah 1921, which reads as follows:

"The board of directors, or other officers of the district, shall have no power to incur any debt or liability whatever, either by issuing bonds or otherwise, in excess of the express provisions of this act, and any debt or liability incurred in excess of such express provisions shall be and remain absolutely void; provided, however, that the district shall assume the expense incurred in its organization and may incur additional indebtedness for the conduct of its business until bonds are sold or returns from first district taxes are received, which additional indebtedness, together with such expense assumed, shall not exceed $3.00 per acre of land embraced within the district; such indebtedness shall be the general obligation of the district and the board of directors may cause warrants or notes of the district to issue therefor, bearing interest not exceeding 7 per cent. per annum. Said warrants or notes shall be payable not later than the 1st day of January following the receipt of the first district taxes levied and collected and the board of directors of the district shall include in their first annual budget for the ensuing year the amount necessary to liquidate all such outstanding warrants, or notes."

Section 23 of the same act, as the same appears in chapter 68 of the Laws of Utah 1919, so far as material here, provides:

"No claim shall be paid by the district treasurer until the same shall have been allowed by the board, and then only upon warrants signed by the president, and countersigned by the secretary, which warrants shall state the date authorized by the board and for what purpose. * * *"

Plaintiffs also allege that said district is indebted for various purposes, stating the amount of such indebtedness; that it has no funds in the treasury with which to pay said indebtedness; that the defendants have failed and refused to make the allotments of water to the lands in said district as provided by statute, and have failed and refused to take the necessary or any steps as provided by statute to raise or provide the funds with which to pay the indebtedness of the

district, and that, unless coerced by writ of mandate to do so, they will continue to refuse to make any provision to pay such indebtedness, including the notes aforesaid.

The complaint states the facts with much particularity.

Plaintiffs also allege that $1,000 would be a reasonable attorney fee.

The plaintiffs pray for a writ of mandate requiring the defendants to take the necessary steps to raise funds with which to pay said notes and attorney's fee by levying an assessment for that purpose, etc.

An alternative writ of mandate was duly issued commanding the defendants to show cause why a peremptory writ should not issue requiring them to take the necessary steps to provide the funds with which to pay plaintiffs' notes, including attorney's fee, etc.

The defendants appeared and filed a general demurrer to the complaint, and, at the same time, as permitted by our statute, they also filed their joint answer. We pass by the demurrer without comment.

In the answer, the defendants, after admitting the organiation of the district and that the defendants Conroy, Foy, and Fuller constitute the present board of directors of said district, "deny each and every allegation thereto except as hereinafter admitted or alleged." It is then averred:

"These defendants state that plaintiffs' claim was not itemized or presented to, or ever considered by the board of directors of said district as alleged or otherwise, and these defendants now state that said claim was never presented or acted upon at a regular or duly called meeting of the board of directors and that no regular meetings of the board were ever held during the year 1922, and if any meeting was held no notice thereof was ever given to Director Foy, who was not present, nor was said claim ever considered by any board of directors of the defendants, and these defendants further state that the amount of said claim is largely in excess of any services ever rendered by the plaintiffs and in part for services which were not a claim against the district, and that the plaintiffs, in collusion with Directors McKay and Bues wrongfully attempted to allow said claim as a claim against the defendant district, well knowing that the same was excessive in amount and wrongful as aforesaid, and was attempted to be acted upon just before the expiration of their terms of office, and at a time when said directors

were not in session as directors, and in the absence of Director Foy, and without notice to him, and when they were in fraud of the rights of the district voting each other large and excessive salaries, all of which acts were done and performed by and with the knowledge and consent of the plaintiffs."

We pass over the next four pages of the answer containing defensive matters, after which it is further alleged:

"These defendants further state on information and belief that all the warrants and all of the alleged notes outstanding against said defendant district were dated about December 23, 1923 (1922), and December 30, 1923 (1922), by D. D. McKay, who purported to act as president, and Louis Wangsgard, who purported to act as secretary, but at the time same were made and delivered neither the said McKay or said Wangsgard were the president or secretary of said district, their terms of office having expired long prior to the day when any of said notes or warrants were made, given, or delivered, and that none of the warrants or notes referred to in the pleadings herein were made, issued, or delivered by the president and secretary of said district."

The defendants also assail the attorney's fee, and state further various defenses to which it is not necessary to refer specifically.

A motion to strike large parts of the answer, as well as a demurrer to the answer is interposed by plaintiffs. A lengthy reply is also filed to the answer in which some of the facts averred therein are confessed and avoided, while others are denied, and as to others still facts in the nature of an estoppel are averred.

While the foregoing constitutes but a very meager outline of the various pleadings, motions, and demurrers that have been filed in this proceeding, yet, in our judgment, it is sufficient to show the object and purpose of the proceeding.

In view that we have arrived at the conclusion that a peremptory writ of mandate, for the reasons hereinafter appearing, must be denied, we shall refrain from passing upon the several demurrers and motions filed by the parties. Indeed, we shall not, in this proceeding, attempt to pass upon the alleged defects in the pleadings, and will leave all questions relating thereto to be determined in a proper proceeding.

It is elementary that a writ of mandate will not issue when

there is another plain, speedy, and adequate remedy. Indeed, our statute is to the effect that a writ of mandate will issue only ''where there is no plain, speedy, and ade-    1-3 quate remedy in the ordinary course of law.'' Nor will the writ issue where, as here, it is necessary to try and decide complicated questions of fact. 26 Cyc. 157. The law is also well settled that—

"A proceeding by mandamus for the enforcement of a claim is not favored where the party instituting it has a remedy in the usual course of law." *Electric Co.* v. *Philadelphia*, 187 Pa. 446, 41 Atl. 309.

See, also, *Cassatt* v. *Board of Comm'rs. etc.*, 39 Kan. 505, 18 Pac. 517, where an alternative writ was issued upon an application to coerce the payment of district bonds, and where, after a hearing, a peremptory writ was denied upon the ground that the district had set up some defenses to the bonds. It was there held that under such circumstances payment could not be enforced by a writ of mandate, but that an action upon the bonds was the only proper remedy.

Another objection is that the plaintiffs ask that the several defenses that are set up to the notes in question be tried out in this proceeding. To do that, however, is not the province of a mandamus proceeding. True it is that plaintiffs insist that the defenses set up in the answer are not legal defenses. Quite apart from the denials in the answer under which the defendants certainly could have offered negative testimony to contradict or overthrow every affirmative allegation in the complaint, we are clearly of the opinion that the affirmative averments respecting the irregularity and illegality of the board meeting, at which it is alleged that the claim of plaintiffs for services was audited and allowed and the notes issued, if established, constitute a valid defense to the notes so far as the district is concerned; that is, if the board was not legally convened or in session, then there never was a valid audit and allowance of plaintiffs' claim for services, and hence the notes were not legally issued and are not binding upon the district. While notwithstanding that plaintiffs may still be entitled to recover the reasonable value of their services in a proper proceeding against the district, they, never-

theless, will not be permitted to recover upon the notes since they would not constitute a valid claim against the district.

Moreover, if that defense were established the plaintiffs could not coerce the district to levy the assessment until plaintiffs had legally established their claim and had determined the amount thereof. If, therefore, it be assumed that the notes in question nevertheless constitute a proper basis for a proceeding against the district, yet mandamus is not the proper remedy. True, plaintiffs insist that the notes are the same as though the warrants of the district had been issued to them and payment thereof had been refused. But, assuming that warrants had been issued instead of the notes, and the defendants came into court and in answer to the complaint alleged, as they do here, namely, that plaintiffs' claim had never been audited and allowed, that the same was excessive and in part, at least, illegal, that the pretended warrants were issued at a meeting of the board of directors of which not all of the members had notice, and that all were not present, and that the meeting was illegally convened and held, would it then be held that a writ of mandate should issue to compel payment of such warrants? Most certainly not. We are inclined to the opinion, however, that even under our statute the promissory notes in question are merely promises to pay and constitute evidences of debt, and that, in case the district refuses to pay them, an action thereon constitutes the speedy and adequate remedy in due course of law which is contemplated by our statute. Why should the promissory notes of an irrigation district, which is merely a corporate entity, be treated differently from the promises to pay of other corporate entities? If, for instance, a private corporation had issued its promises to pay in the form of negotiable promissory notes, no one would contend that payment could be coerced by suing out a writ of mandate. Nor, in case a municipal corporation had issued promissory notes, would anyone attempt to collect the same in a proceeding of this kind. And that would be especially true if, as here, it were averred that the notes were not legally issued. If this proceeding is proper, then we cannot conceive why, in any

case where promissory notes are issued by a public corporation payment thereof cannot be coerced by the issuing out of a writ of mandate, and in such a proceeding thresh out the various defenses that may be set up, by the maker of the notes. To permit that would indeed amount to making an extraordinary use of what is termed an extraordinary writ. Ordinary court proceedings would then only be resorted to at the option of the payee or indorsee of such notes.

Moreover, if plaintiffs have not a speedy and adequate remedy in the ordinary course of law, as these terms are understood and applied by the courts and text-writers, then there is no such remedy in cases where promissory notes have been issued as evidences of debt.

Without going into further detail, we are all of one mind and are firmly convinced that the alternative writ was improvidently issued, that the same should be quashed, and that a peremptory writ should be denied, at plaintiffs' cost. Such is the order.

GIDEON, THURMAN, and CHERRY, JJ., concur.

WEBER, C. J., did not participate.