2000 Utah Ct. App. 201

**SALT LAKE CITY, Plaintiff and Appellee,**

v.

**Keith ROBERTS, Defendant and Appellant.**

**No. 990876–CA.**

Court of Appeals of Utah.

June 29, 2000.

W. Andrew McCullough, Orem, for Appellant.

Richard W. Daynes, Salt Lake City Prosecutor's Office, Salt Lake City, for Appellee.

Before Judges BENCH, BILLINGS, and ORME.

## OPINION

BILLINGS, Judge:

¶ 1 Defendant appeals his conviction for disorderly conduct under Salt Lake City Code section 11.16.100. We affirm in part and remand with instructions.

### FACTS

¶ 2 Two undercover Salt Lake City police officers followed defendant's car to a parking lot behind a bar because the woman he had picked up was a known prostitute. One officer testified that when they arrived, numerous patrons of the bar were arriving and leaving the parking lot, and that anyone could walk back to the area in the lot where the couple was parked, which was behind two flatbed trucks. He stated that the car was in an area that was "open to public view." However, to observe defendant and his companion without being spotted by them, the officers "parked in front of the bar so [defendant and his companion] couldn't see [the police] car and ... snuck around on foot and approached the car." One officer then crawled underneath one of the flatbed trucks to approach the car so he could not be seen. The officer testified that after emerging from under the flatbed truck he was standing "15 to 20 feet away." The officer stated, "I could see into the back window. She was sitting in the passenger seat turned toward him. I saw her lift her shirt, exposing her breasts. I saw the driver put his mouth to her breasts ... and that's when I approached the car from the back." The officer further testified

that the trucks "gave them a little bit of hiding room," that defendant and his companion were "somewhat hidden" behind the trucks, and that no member of the public would be likely to crawl underneath the truck to observe defendant's conduct. However, the officer repeatedly stated that a person could get to the area where defendant had parked without crawling under the truck.

¶ 3 Following a bench trial, defendant was convicted of disorderly conduct under section 11.16.100 of the Salt Lake City Code.

## ANALYSIS

### I. City Ordinance

■■■ ¶ 4 Defendant first asserts the city ordinance under which he was convicted is invalid because it does not mirror the state statute governing lewdness. *See* Utah Code Ann. § 76–9–702 (1996). This is a question of law; thus, we review it for correctness. *See State v. Anderson,* 910 P.2d 1229, 1232 (Utah 1996). The Utah Supreme Court has held that ordinances passed by municipalities are valid unless they are inconsistent or conflict with state law. *See Redwood Gym v. Salt Lake County Comm'n,* 624 P.2d 1138, 1144 (Utah 1981); *Salt Lake City v. Allred,* 20 Utah 2d 298, 299, 437 P.2d 434, 435 (1968); *see also* Utah Code Ann. § 10–8–84 (1999). Municipal ordinances and state law are not inconsistent when they share a common purpose and are "closely related in subject matter." *Allred,* 437 P.2d at 437. Furthermore, a "municipal ordinance need not be identical to the controlling state statute to be consistent with it." *Richfield City v. Walker,* 790 P.2d 87, 90 (Utah Ct.App.1990). In this case, the fact that the language of the Salt Lake City ordinance does not mirror the state statute does not render the ordinance invalid. The common purpose of both the city ordi-

nance and state law is to prohibit sexual behavior in places where the public may be affronted or offended. Compliance with the city ordinance does not preclude compliance with state law or vice versa. *See Walker v. Union Pac. R.R. Co.,* 844 P.2d 335, 339–40 (Utah Ct.App.1992) (holding city ordinance preempted by state law because ordinance prohibited act specifically allowed under state law). Accordingly, we affirm the trial court's conclusion that Salt Lake City Code § 11.16.100 is valid as it does not conflict with state law.[1]

### II. "Sexual Conduct"

■■■ ¶ 5 Defendant next argues that the facts do not support a finding that he "[e]ngage[d] in sexual conduct … with another person," as prohibited by section 11.16.100(B) or "ma[d]e an intentional exposure of his … genitals, pubic area, buttocks or any portion of the areola and/or nipple of the female breast," as prohibited by section 11.16.100(C).[2] We review the trial court's factual findings under a clearly erroneous standard. *See State v. O'Brien,* 959 P.2d 647, 648 (Utah Ct.App.1998).

¶ 6 We conclude the facts before the trial court were sufficient to show beyond a reasonable doubt that defendant "engaged in sexual conduct" within the meaning of the ordinance. The Salt Lake City Code defines "sexual conduct" as "human masturbation, sexual intercourse, or any touching of the covered or uncovered genitals, human female breast, pubic areas or buttocks of the human male or female, whether alone or between members of the same or opposite sex." Salt Lake City Code § 11.16.010. Undisputed trial testimony established that one of the arresting officers saw defendant parked in his car kissing the exposed breasts of the woman he was with and saw defendant's exposed geni-

---

1. Defendant additionally contends the terms of the ordinance make it unconstitutionally vague and thus void. However, defendant raises this argument for the first time on appeal. "[I]ssues raised for the first time on appeal will be addressed only if the trial court proceedings demonstrated 'plain error.'" *State v. Olsen,* 860 P.2d 332, 333 (Utah 1993) (citation omitted). Defendant has failed to demonstrate or even allege plain error by the trial court; thus, we do not address his vagueness argument.

2. Defendant contends that section 11.16.100 does not define "sexual conduct," basing his argument on an interpretation of subsection C, governing intentional exposure of the genitals. However, "sexual conduct" is defined by section 11.16.010, and because the trial court could reasonably have found that sexual conduct occurred, we need not address defendant's argument regarding subsection C.

tals. This testimony sufficiently supported a finding of "sexual conduct."

### III.   Place "Open to Public View"

¶ 7 Finally, defendant argues that he was improperly convicted because he was not "in a place open to public view" when the sexual conduct occurred. *See id.* § 11.16.100. The trial court found defendant was "in a place open to public view" under the ordinance because defendant "was [in] a public parking lot" when the conduct took place. Defendant claims the district court's interpretation of the statutory language was in error. "Because a district court's interpretation of a statute is a legal question, we review its ruling for correctness." *Jeffs v. Stubbs*, 970 P.2d 1234, 1240 (Utah 1998).

¶ 8 The relevant portion of the ordinance states: "It shall be unlawful for any person, while in a place open to public view, to willfully: ... B. Engage in sexual conduct, alone or with another person." Salt Lake City Code § 11.16.100. No Utah case has defined what constitutes "open to public view" under the ordinance. However, in addressing similar situations, other jurisdictions have emphasized the fact-intensive nature of the inquiry. For example, the Appellate Court of Illinois held that consensual sexual activity in a city park

> near the lagoon, at seven o'clock in the morning on the first of September, on a bright, sunshiny day, where people walked their dogs and jogged (as the defendant himself was doing), and where the defendant not only could have been but in fact was seen by a police officer riding in an automobile on an access road, was indeed [in] a "public place" in that there was a high probability that the deviate conduct would be viewed by other members of the public.

*State v. Baus*, 16 Ill.App.3d 136, 305 N.E.2d 592, 593 (1973). In contrast, in a case involving sexual conduct occurring in a parked vehicle "in a turnaround area opposite a residence" at 3:30 a.m., where "the car was stationed between two street lights," where "no persons other than the police officers saw [defendant,] and they themselves would not have seen him had they not followed him

from Maunakea Street," and where "[n]o evidence of any pedestrian or vehicular traffic on the lane was offered," the court held "it was improbable that [defendant's] acts would be observed by members of the public" and reversed defendant's conviction. *State v. Broad*, 61 Haw. 187, 600 P.2d 1379, 1379–82 (1979).

¶ 9 As the Court of Appeals of New York pointed out, "it is necessary to interpret and apply the statute here in a manner that comports with its purpose." *People v. McNamara*, 78 N.Y.2d 626, 578 N.Y.S.2d 476, 585 N.E.2d 788, 793 (1991) (interpreting term "public place"). "That a member of the public may pass by is certainly part of the essence of a public place, and the harm to such a person's sensibilities is precisely that aimed at by the statute. Conversely, where no such harm is likely, the statute is not violated." *Id.* Thus, we agree with the New York court that "[s]exual acts performed in parked cars ... may be prosecuted [under the ordinance] when ... the objective circumstances establish that the lewd acts committed there can and likely would be seen by a casual passerby." *Id.*

¶ 10 Defendant contends the fact that he parked his car at night behind flatbed trucks in the rear area of the parking lot, which was bordered by a two-story cement wall, a chain-link fence, and a closed business, does not support the trial court's conclusion that he was "in a place open to public view."

¶ 11 In this case, the trial court concluded that the parking lot behind the bar was "open to public view" under the ordinance. The court apparently relied upon the fact that the conduct took place in a public parking lot, stating at trial, "I think the problem is that the language [of the ordinance] is tough to deal with, but I'm not going to struggle with it too much. It was a public parking lot, in my view, it was [therefore] open to public view." We conclude the trial judge applied an incorrect legal standard equating a public parking lot to the statutorily required "place open to public view." A public parking lot, such as the one behind the bar where defendant's conduct

occurred, may or may not be a "place open to public view" for purposes of the ordinance. This determination turns on the facts of each case. The key inquiry is whether the conduct is likely to be observed by a member of the public. *See Broad,* 600 P.2d at 1381 (quoting *State v. Rocker,* 52 Haw. 336, 475 P.2d 684, 688 (1970) (stating that "the trier of fact is justified in finding the place public if the exposure is such that it is likely to be seen by a number of casual observers")).[3]

¶ 12 The record indicates that the officers had followed defendant's car to the bar; they had not merely passed by and spotted the activity. One officer saw defendant kissing the exposed breast of his companion, but only after the officer crawled under the flatbed truck, which the officer admitted would be an unusual thing for a casual passerby or bar patron to do. However, the officers testified that numerous patrons were arriving and leaving the parking lot and that any of them could have walked to the area where defendant had parked his car. One officer further testified that he could see the conduct at issue when standing fifteen to twenty feet away from the car. From the record before us, we cannot determine as a matter of law whether defendant was or was not "in a place open to public view." Accordingly, we remand this case to the trial court with instructions to apply the law as set forth in this opinion to the evidence previously presented to determine whether defendant's conduct was "open to public view." *See State v. Giron,* 943 P.2d 1114, 1121 (Utah Ct.App. 1997) (remanding for trial court to re-examine previously presented evidence "[b]ecause the trial court was operating under a misunderstanding of the law"); *State v. Hansen,*

857 P.2d 978, 982 (Utah Ct.App.1993) (remanding because trial court's findings were inadequate for appellate court to determine whether legal standard was properly applied).

### CONCLUSION

¶ 13 We affirm the trial court's conclusion that Salt Lake City Code § 11.16.100 is valid. We conclude the facts before the trial court were sufficient to show beyond a reasonable doubt that defendant "engaged in sexual conduct" within the meaning of the ordinance. Because we cannot determine as a matter of law from the record whether defendant's conduct occurred in a place "open to public view," we remand with instructions that the trial court apply the legal standard set forth in this opinion. The trial court should then reaffirm or vacate defendant's conviction depending on its determination whether or not the conduct occurred "in a place open to public view."

¶ 14 I CONCUR: GREGORY K. ORME, Judge.

BENCH, Judge (dissenting in part):

¶ 15 I agree with sections I and II of the main opinion. I disagree, however, with section III because I do not believe the trial court needs to redetermine whether this sexual conduct occurred "in a place open to public view."

¶ 16 Although Utah courts have not interpreted this particular ordinance, we have had significant experience in assessing what is open to public view. In the search and sei-

---

3. We disagree with the dissent's conclusion that the interpretation of the statutory language "in a place open to public view" in this disorderly conduct lewdness ordinance should be drawn from decisions holding that Fourth Amendment protection from unlawful search does not attach to objects in plain view of a police officer. While "[i]t has long been the law that objects falling within the plain view of an officer from a position where he is entitled to be are not the subject of an unlawful search," *State v. Holden,* 964 P.2d 318, 321 (Utah Ct.App.1998) (quoting *State v. Lee,* 633 P.2d 48, 51 (Utah 1981)), this case does not challenge the legality of a search under the Fourth Amendment. As the New York Court of Appeals noted in rejecting a similar argument:

"plainly, the existence of a diminished expectation of privacy [for Fourth Amendment purposes] does not transform the interior of an automobile into a 'public place.'" *People v. McNamara,* 78 N.Y.2d 626, 578 N.Y.S.2d 476, 585 N.E.2d 788, 791 (1991) (interpreting term "public place"). The policy under the Fourth Amendment governing when an officer may search an automobile and the policy behind when disorderly conduct occurs "in a place open to public view" are entirely different. The former controls officer conduct under the Fourth Amendment; the latter protects citizens from observing lewd private conduct. Our interpretation comports with this policy difference and is consistent with case law from our sister states.

zure context, for example, we have consistently allowed officers to seize evidence when the evidence is " 'in open view from a position lawfully accessible to the public.' " *State v. Holden,* 964 P.2d 318, 321 (Utah Ct.App.), *cert. denied,* 982 P.2d 88 (Utah 1998) (quoting *State v. Lee,* 633 P.2d 48, 51 (Utah 1981)); *see also State v. Belgard,* 840 P.2d 819, 823 (Utah Ct.App.1992) (stating that once officer is in a place "lawfully accessible to the public," officer is "free to observe whatever was in his open view that might have been observed by any other member of the general public").

¶ 17 It is undisputed that the officer in the instant case saw defendant kiss the exposed breasts of the woman he was with and he saw defendant's exposed genitals. It is also undisputed that the officer witnessed this sexual conduct from a place lawfully accessible to any member of the general public—as he stood in a public parking lot. Given the well-accepted standard in Utah case law regarding what it means to be in a place open to public view, I see no need to look to the case law of foreign jurisdictions. My conclusion is bolstered by the fact that the foreign jurisdictions cited in the main opinion would import a "likely [to be] seen by a casual passerby" standard, which is required neither by the plain language of the instant ordinance nor by the relevant Utah case law.

¶ 18 Accordingly, I would affirm outright the judgment of the trial court.