2002 UT 30

**SALT LAKE CITY, Plaintiff and Appellant,**

v.

**Keith ROBERTS, Defendant and Appellee.**

No. 20000679.

Supreme Court of Utah.

March 15, 2002.

Roger F. Cutler, Boyd A. Ferguson, Richard W. Daynes, Salt Lake City, for plaintiff.

W. Andrew McCullough, Orem, UT, for defendant.

Janelle P. Eurick, Stephen C. Clark, Salt Lake City, for amicus curiae.

DURRANT, Justice.

## INTRODUCTION

¶ 1 On writ of certiorari, plaintiff Salt Lake City seeks review of *Salt Lake City v. Roberts,* 2000 UT App. 201, 7 P.3d 789, in which a divided Utah Court of Appeals construed a Salt Lake City ordinance criminalizing sexual conduct in a "place open to public view" as requiring the sexual conduct occur in a place where it "is likely to be observed by a member of the public." The court of appeals adopted this definition from the case law of other jurisdictions. Because the Salt Lake City Code provides a definition establishing the meaning of a "place open to public view," we reverse the court of appeals' interpreta-tion of the ordinance and remand with instructions to apply the codified definition.

## BACKGROUND

### I. EVENTS SURROUNDING DEFENDANT'S ARREST

¶ 2 At approximately 8:45 p.m. on July 9, 1999, two undercover Salt Lake City police officers saw defendant pick up a woman. *Roberts,* 2000 UT App. 201 at ¶ 2, 7 P.3d 789. Believing the woman was a prostitute, the officers followed defendant's car to a parking lot behind a bar that was open for business. *Id.* Defendant parked his car behind two flatbed trucks in the rear of the parking lot. *Id.* Bordering the parking lot was "a two-story cement wall, a chain-link fence, and a closed business." *Id.* at ¶ 10. One of the officers later testified that, at the time, numerous patrons of the bar were entering and leaving the parking lot, and that anyone could walk back to the area of the lot where defendant was parked. *Id.* at ¶ 2.

¶ 3 To avoid detection, the officers parked in front of the bar and proceeded to the parking lot on foot. One officer crawled beneath one of the flatbed trucks and emerged approximately 15 to 20 feet from defendant's car. *Id.* The officer later testified that this vantage point permitted him to "see into the back window" of defendant's car and observe defendant put his mouth to the woman's exposed breasts. *Id.* The officer further testified that when he approached the car, he also observed defendant's exposed genitals. *Id.* at ¶ 6.

¶ 4 The officers arrested defendant for disorderly conduct under Salt Lake City Code § 11.16.100 ("disorderly conduct ordinance"), which, in relevant part, makes it "unlawful for any person, while in a place open to public view, to willfully . . . [e]ngage in sexual conduct, alone or with another person[, or] . . . [m]ake an intentional exposure of his or her genitals. . . ." Salt Lake City Code § 11.16.100.

### II. TRIAL COURT PROCEEDINGS

¶ 5 At defendant's bench trial, the officer who crawled beneath the truck conceded that

the trucks somewhat concealed defendant's conduct, and that no member of the public would likely crawl beneath the truck to observe the conduct. *Roberts,* 2000 UT App. 201 at ¶2, 7 P.3d 789. However, the officer repeatedly stated that a person could have approached defendant's car and observed the conduct without crawling under the truck. *Id.*

¶6 The trial court found that defendant willfully engaged in sexual conduct with his companion. The court further found that defendant's conduct occurred in a "place open to public view" under the ordinance because it occurred in a public parking lot. Accordingly, the trial court found defendant guilty of disorderly conduct.

## III. DEFENDANT'S APPEAL TO THE UTAH COURT OF APPEALS

¶7 On appeal to the Utah Court of Appeals, defendant claimed that (1) differences between the state lewdness statute and Salt Lake City's disorderly conduct ordinance rendered the ordinance invalid under preemption principles, *Roberts,* 2000 UT App. 201 at ¶4, 7 P.3d 789; (2) the facts did not support a finding that he willfully engaged in sexual conduct with another person, *id.* at ¶5; and (3) the trial court misconstrued the ordinance in concluding that his conduct occurred in "a place open to public view." *Id.* at ¶7.

¶8 The court of appeals rejected defendant's first two claims. In reviewing his first claim, the court of appeals noted that "ordinances passed by municipalities are valid unless they are inconsistent or conflict with state law." *Id.* at ¶4 (citing, inter alia, *Redwood Gym v. Salt Lake County Comm'n,* 624 P.2d 1138, 1144 (Utah 1981)). For guidance on what constitutes an inconsistency, the court of appeals relied on *Salt Lake City v. Allred,* 20 Utah 2d 298, 299, 437 P.2d 434, 435 (1968), in which we held that "[m]unicipal ordinances and state law are not inconsistent when they share a common purpose and are 'closely related in subject matter.' " *Roberts,* 2000 UT App. 201 at ¶4, 7 P.3d 789 (quoting *Allred,* 20 Utah 2d at 302, 437 P.2d at 437). Applying the *Allred* standard to the disorderly conduct ordinance and the state lewdness

statute, Utah Code Ann. § 76–9–702 (1996), the court of appeals concluded that the two provisions share the common purpose of "prohibit[ing] sexual behavior in places where the public may be affronted or offended." *Id.* at ¶4 (applying *Allred* ). Having found no conflict between the state lewdness statute and the disorderly conduct ordinance, the court of appeals upheld the validity of the ordinance. *Id.*

¶9 The court of appeals also rejected defendant's claim that the evidence did not support the trial court's conclusion that he engaged in "sexual conduct" within the meaning of the ordinance. *Id.* at ¶¶5–6. Reviewing this finding for clear error, the court of appeals concluded that the arresting officer's undisputed trial testimony that defendant kissed the exposed breasts of his female companion and exposed his genitals was "sufficient to show beyond a reasonable doubt that defendant 'engaged in sexual conduct' within the meaning of the ordinance." *Id.* at ¶6.

¶10 As to defendant's third claim, the court of appeals noted that, in concluding defendant's conduct occurred in a "place open to public view," the trial court evidently did not consider the totality of the circumstances, but only the fact that it occurred in a place accessible to the public:

> The [trial] court apparently relied [solely] upon the fact that the conduct took place in a public parking lot, stating at [defendant's bench] trial, "I think the problem is that the language [of the ordinance] is tough to deal with but I am not going to struggle with it too much. It was a public parking lot, in my view, it was [therefore] open to public view."

*Id.* at ¶11 (first and second alterations added).

¶11 Reviewing the trial court's interpretation for correctness, *id.* at ¶7, the court of appeals first noted that no Utah appellate court has defined "open to public view" as used in the ordinance. *Id.* at ¶8. For guidance, the court turned to case law from other jurisdictions interpreting statutes criminalizing sexual activity in a "public place." *Id.* at ¶¶8–9. In contrast to the trial court's reli-

**771**

ance solely on the fact that defendant's conduct occurred in a public parking lot, these jurisdictions have interpreted "public place" as requiring a "fact-intensive" inquiry into "whether the conduct is likely to be observed by the public." *Id.* at ¶¶ 8–9, 11.

¶ 12 Adopting this interpretation, the court of appeals ruled that the trial court erred in considering only the fact that defendant's conduct occurred in a public parking lot. *Id.* at ¶ 11. From the record before it, however, the court of appeals could not determine as a matter of law whether or not defendant's conduct occurred in a place likely to be observed by a member of the public. *See id.* at ¶ 12. Accordingly, the court remanded the case with instructions that the trial court make this determination. *Id.* at ¶¶ 12, 13.

¶ 13 One judge dissented from the majority's interpretation of a "place open to public view" and its decision to remand. *Id.* at ¶¶ 15–18 (Bench, J., dissenting in part). Specifically, the dissent contended that, in interpreting this language, instead of relying on "case law from foreign jurisdictions," *id.* at ¶ 17, the majority should have drawn upon the court's significant experience from the Fourth Amendment search and seizure context "in assessing what is open to public view." *Id.* at ¶ 16. In the Fourth Amendment context, the dissent noted, Utah courts "have consistently allowed officers to seize evidence when the evidence is in open view from a position that is *lawfully accessible* to the public." *Id.* (citations and internal quotations omitted) (emphasis added). This standard, reasoned the dissent, better comports with the plain language of the ordinance than the majority's interpretation, which the dissent believed "import[ed]" into the ordinance the "likely [to be] seen" requirement. *Id.* at ¶ 17. Applying its interpretation to the facts of the case, the dissent concluded that, as a matter of law, defendant's sexual conduct occurred in a "place open to public view" because "the officer witnessed this sexual conduct from a place lawfully accessible to any member of the general public—as he stood in the public parking lot." *Id.* Thus, the dissent would have affirmed defendant's conviction without remand. *Id.* at ¶ 18.

¶ 14 We granted Salt Lake City's petition for certiorari, and now reverse the court of appeals' interpretation of a "place open to public view" and remand.

## STANDARD OF REVIEW

¶ 15 "When exercising our certiorari jurisdiction, we review the decision of the court of appeals and not that of the trial court. Inasmuch as the issues before this court are questions of law related to statutory construction, we review the court of appeals' ruling for correctness." *Longley v. Leucadia Fin. Corp.,* 2000 UT 69, ¶ 13, 9 P.3d 762 (citations omitted).

## ANALYSIS

I. THE COURT OF APPEALS ERRED IN NOT RELYING ON THE DEFINITION OF A "PLACE OPEN FOR PUBLIC VIEW" IN THE SALT LAKE CITY CODE

¶ 16 The section of the Salt Lake City Code that defendant was found guilty of violating, section 11.16.100 ("disorderly conduct ordinance"), provides in relevant part as follows:

11.16.100 Urinating in public and other disorderly conduct.

It is unlawful for any person, while in a *place open to public view,* to willfully:

. . . .

B. Engage in sexual conduct, alone or with another person . . .

C. Make an intentional exposure of his or her genitals . . .

. . . .

Salt Lake City Code § 11.16.100 (1996) (emphasis added).

¶ 17 On certiorari, Salt Lake City argues that the court of appeals erred in interpreting a "place open to public view" as used in the ordinance. Specifically, Salt Lake City contends that, in interpreting this language, the court of appeals should not have relied on the case law of other jurisdictions, but instead on the definition provided by the Salt Lake City Council. We agree.

¶ 18 In interpreting legislation, "our primary goal is to give effect to the [legislative] intent in light of the purpose" of the ordinance. *See Evans v. State*, 963 P.2d 177, 184 (Utah 1998). When a legislative body provides a section containing the definitions of terms, and specifies the legislation to which the definitions apply, this demonstrates the body's intent that the "definitions establish meaning where the terms appear" within the legislation. 2A Sutherland's Statutory Construction § 47.07 (6th ed.2000).

¶ 19 The Salt Lake City Code contains a definition section in which the Salt Lake City Council defined a "place open for public view" for purposes of the chapter encompassing the disorderly conduct ordinance:

11.16.010  Definitions:

*As used in this chapter*, unless context requires otherwise:

. . . .

M.  "Place open for public view" means an area capable of use or observance by persons from the general community, where an expectation for privacy for the activity engaged in by individuals is not reasonably justified.

. . . .

Salt Lake City Code § 11.16.010(M) (1996) (emphasis added).

¶ 20 Thus, had the drafters of the disorderly conduct ordinance used the exact words of the defined phrase (i.e., "place open *for* public view" (emphasis added)), they clearly would have intended the phrase have the meaning provided by the definition in section 11.16.010(M). However, the operative phrase in the disorderly conduct ordinance differs slightly from the phrase defined in section 11.16.010(M): specifically, the operative phrase contains the preposition "to" instead of the preposition "for." *Id.* § 11.16.100 (criminalizing certain conduct when it occurs in a "place open *to* public view" (emphasis added)).

¶ 21 As a result, we must decide whether, despite this difference, the city council intended to apply the definition in section 11.16.010(M) to the phrase "place open to public view" in the disorderly conduct ordinance. To thus apply the defined phrase in section 11.16.010(M) would require, in effect, the substitution of "for" in place of "to" in the operative phrase in the ordinance.

¶ 22 Although courts generally presume a legislative body chooses its words advisedly, "[a] majority of cases permit the substitution of one word for another if necessary to carry out the legislative intent or express clearly manifested meaning." 2A Sutherland's Statutory Construction § 47.36 (6th ed.2000) (citing, inter alia, *White v. Rio Grande W. Ry. Co.*, 25 Utah 346, 71 P. 593 (1903) (substituting "causes of actions" for "businesses" in former Article VIII, Section 5 of Utah Constitution)). "[P]roperly understood, and exercised with due caution, [substitution of one word for another] is not judicial legislation, but is simply a method of arriving at legislative intent defectively expressed." *Id.* (quoting *Gill v. Miller*, 94 Ill.2d 52, 67 Ill.Dec. 850, 445 N.E.2d 330, 334 (1983)).

¶ 23 There are strong indications that the city council intended that the definition of "[a] place open for public view" in section 11.16.010 apply to the disorderly conduct ordinance. The preamble of section 11.16.010 states that the definitions it provides are for terms and phrases "[a]s used in this chapter," which indicates that the drafters believed they had used the defined terms and phrases somewhere within chapter 11.16. Contrary to this apparent intent, the defined phrase "[a] place open *for* public view" is not used in the chapter. However, the phrase "a place open *to* public view," which differs from the defined phrase only by a preposition, is used twice, both in the disorderly conduct ordinance and in section 11.16.020(A)(6). Salt Lake City Code § 11.16.020(A)(6) (1996) (prohibiting "meretricious display[s] in or near any public place, any place frequented by the public, or any *place open to the public view*" (emphasis added)). Under the circumstances, it appears the city council intended that section 11.16.010's definition of a "place open for public view" apply to a "place open to public view" in the disorderly conduct ordinance, but defectively expressed this intent by using different prepositions. Accordingly, we hold that the definition of a "place open for public view" establishes the

meaning of a "place open to public view" in the disorderly conduct ordinance.[1]

## II. INTERPRETATION OF THE CITY COUNCIL'S DEFINITION

¶ 24 Based on the definition in the Salt Lake City Code, for defendant's sexual conduct to have occurred in a "place open to public view," the sexual conduct must have occurred (1) in "an area capable of use or observance by persons from the general community," and (2) "where an expectation for privacy for the activity engaged in by individuals is not reasonably justified." Salt Lake City Code § 11.16.010(M) (1996).

¶ 25 Neither party contends that the definition's first element requires additional interpretation. Regarding the definition's second element, Salt Lake City echoes the views of the court of appeals' dissent and argues that, in determining what the city council intended by an "expectation for privacy" that "is not reasonably justified," we should rely on case law from the Fourth Amendment search and seizure context. Under this case law, observations by law enforcement of activity in "open view" from a position "lawfully accessible to the public" do not infringe upon an individual's "*reasonable expectation of privacy*," and thus do not constitute a search under the Fourth Amendment. *State v. Lee*, 633 P.2d 48, 51 (Utah 1981) (emphasis added) (ruling, in Fourth Amendment search and seizure context, that a person does not have a reasonable expectation of privacy in an automobile parked in a parking lot open to the public). We reject Salt Lake City's argument for two reasons.

¶ 26 First, interpreting the definition's second element as turning on whether law enforcement observed the conduct from a "position lawfully accessible to the public" would render it almost identical to the first requirement, i.e., whether the conduct occurred in "an area capable of use or observance by persons from the general community." Salt Lake City Code § 11.16.010(M) (1996). Thus, under Salt Lake City's proposed interpretation, the "expectation for privacy" element would become largely superfluous. An interpretation of statutory language that renders other parts of the statute superfluous is to be avoided. *State v. Morrison*, 2001 UT 73, ¶ 11, 31 P.3d 547.

¶ 27 Second, in the absence of evidence of intent to the contrary, the words of a statute or ordinance are given their common meaning. *Ambassador Athletic Club v. Utah State Tax Comm'n*, 27 Utah 2d 377, 378, 496 P.2d 883 (Utah 1972) (holding that, because "legislature did not define the word 'hotel' " in statute taxing proceeds from the rental of rooms, "it must be understood to have a meaning generally understood and accepted by the public"). The Salt Lake City Council did not evidence an intent to depart from the common meaning of the terms in the second element and adopt a definition from a different legal context. Turning first to the language of the ordinance and the definition, we note that the city council did not express an intent to adopt the Fourth Amendment definition. In addition, in *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), in which the United States Supreme Court held that law enforcement's entry onto open fields

1. Evidently, neither party brought this definition to the court of appeals' attention, because the court neither cited nor alluded to it. Salt Lake City cites this definition, apparently for the first time, in its appellate brief, and it clearly is a better indicator of the city council's intended meaning of a "place open for public view" than judicial interpretations of "public place" from other jurisdictions.

Defendant argues that because Salt Lake City did not rely on this definition before either the trial court or the court of appeals, the City may not rely on this definition before this court. We disagree. The definition provided by the Salt Lake City Council is a "pertinent and significant authorit[y]" on the issue of the intended meaning

of "a place open to public view," and thus either party could properly bring it to our attention, even after oral argument. Utah R.App. P. 24(i) (providing that "[w]hen pertinent and significant authorities come to the attention of a party after that party's brief has been filed, or after oral argument but before decision, a party may promptly advise the clerk of the appellate court, by letter setting forth the citations"). Utah R.App. P. 24(i). To disregard the definition provided by the Salt Lake City Council just because the parties failed to inform the lower courts of its existence would be contrary to our primary goal in interpreting legislation: to discern the intent of the drafters. *See generally Evans v. State*, 963 P.2d 177, 184 (Utah 1998).

to observe marijuana plants was not a Fourth Amendment "search," the Supreme Court downplayed the existence of a correlation between a "reasonable expectation of privacy" and the viewing of the conduct by the general community:

> [W]e reject the suggestion that steps taken to protect privacy establish that expectations of privacy in an open field are legitimate. It is true, of course, that [the alleged drug growers], in order to conceal their criminal activities, planted the marihuana upon secluded land and erected fences and "No Trespassing" signs around the property. And it may be that because of such precautions, few members of the public stumbled upon the marihuana crops seized by the police. Neither of these suppositions demonstrates, however, that the expectation of privacy was legitimate *in the sense required by the Fourth Amendment.* The test of legitimacy is not whether the individual chooses to conceal assertedly "private" activity. Rather, the correct inquiry is whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment.

*Id.* at 182–83, 104 S.Ct. 1735 (emphasis added). Thus, because a "reasonable expectation of privacy" in the Fourth Amendment sense is a term of art that embodies policies unrelated to the purpose of the disorderly conduct ordinance, the city council likely did not intend for Fourth Amendment case law to establish the meaning of the terms used in the ordinance. *See Evans v. State,* 963 P.2d 177, 184 (Utah 1998) (stating that "our primary goal [in interpreting legislation] is to give effect to the [legislative] intent *in light of the purpose*" of the legislation (emphasis added)). Instead, courts should apply the terms in the definition according to their common meaning.

## III. APPLICATION OF THE CITY COUNCIL'S DEFINITION

¶ 28 Applying the definition of a "place open for public view" according to the common meaning of its terms, we conclude that defendant's conduct satisfied the definition's first element, but we remand for a determination of whether his conduct satisfied the second element.

### A. *Whether Defendant's Sexual Conduct Occurred In An "Area Capable Of Use Or Observance By Persons From The General Community"*

¶ 29 To satisfy the definition's first element, defendant's sexual conduct must have occurred in an "area capable of [either] use or observance by persons from the general community." Salt Lake City Code § 11.16.010(M) (1996). We conclude that the "area" in which defendant engaged in sexual conduct, i.e., the interior of a car located in the parking lot of a bar was "capable of . . . observance by persons from the general community." *Id.* Specifically, based on the common meaning of the word "capable," defendant's conduct in the car's interior was "capable of . . . observance" if persons from the general community were "able" to observe the conduct. *See Webster's Third International Dictionary* 330 (1986). This was certainly the case. According to the officer's undisputed trial testimony, "anyone" could have reached the officer's vantage point on foot. Moreover, as noted by the court of appeals, the trial court concluded that defendant was in a "public" parking lot, which indicates that it was used by "persons from the general community." Salt Lake City Code § 11.16.010(M) (1996). Accordingly, we conclude that, as a matter of law, defendant engaged in sexual conduct in "an area capable of . . . observance by persons from the general community."

### B. *Whether Defendant Had An "Expectation For Privacy" In The Sexual Conduct That Was "Reasonably Justified"*

¶ 30 The second element of the definition of a "[p]lace open for public view" requires a determination of whether "an expectation for privacy for the activity engaged in by individuals is reasonably justified." Salt Lake City Code § 11.16.010(M). In this regard, we conclude that the trial court's limited factual findings do not permit us to determine whether defendant's conduct satisfied the second element, which requires an inquiry into the totality of the

relevant circumstances. We therefore remand with instructions that the trial court make this determination according to the common meaning of the words of the second element. *See, e.g., State v. Hansen,* 857 P.2d 978, 982 (Utah Ct.App.1993) (remanding for additional findings because trial court's factual findings did not allow appellate court to determine whether the legal standard was satisfied). If the court finds that defendant's expectation of privacy was not reasonably justified, the court should find defendant guilty of disorderly conduct as it has already been determined that his conduct satisfied the other elements of this crime.[2]

## CONCLUSION

¶ 31 The court of appeals erred in relying on case law from other jurisdictions instead of the city council's definition in interpreting "a place open to public view" as used in the Salt Lake City disorderly conduct ordinance. Although we conclude that defendant's conduct satisfied the definition's "capable of . . . observance" requirement, we remand for a determination regarding the definition's second requirement, i.e., whether defendant's "expectation of privacy for the [sexual conduct was] reasonably justified."

¶ 32 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice WILKINS concur in Justice DURRANT's opinion.

---

2. The trial court has already determined that defendant willfully engaged in "sexual conduct" within the meaning of the disorderly conduct ordinance. The court of appeals affirmed this ruling, *Roberts,* 2000 UT App. 201 at ¶¶ 5–6, 7 P.3d 789, and defendant does not challenge this ruling before this court. In addition, we have concluded that defendant's conduct satisfied the first of the two elements set forth in the definition of a "place open for public view." *Supra* ¶ 29. Thus, in order for the trial court to determine whether defendant is guilty of disorderly conduct, it need assess only whether defendant's conduct satisfied the definition's second element. Salt Lake City Code §§ 11.16.010(M), 11.16.100 (1996).