2005 UT App 191

**SALT LAKE CITY, Plaintiff and Appellee,**

v.

**Gary Allen NEWMAN, Defendant and Appellant.**

No. 20040452–CA.

Court of Appeals of Utah.

May 5, 2005.

Debra Meek Nelson, Samuel P. Newton, and Teresa L. Welch, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Doug A. Johnson, Salt Lake City Attorney Office, Salt Lake City, for Appellee.

Before Judges DAVIS, JACKSON, and THORNE.

## OPINION

JACKSON, Judge:

¶ 1 Gary Allen Newman challenges the district court's denial of his petition for extraordinary relief. We affirm.

## BACKGROUND

¶ 2 On March 20, 2003, Newman, who is on active duty in the military, disputed with his estranged wife. Salt Lake City police officers intervened and arrested Newman. Salt Lake City charged Newman with battery, a domestic violence offense, under Salt Lake City Code section 11.08.020 (the ordinance). *See* Salt Lake City, Ut., Code § 11.08.020 (2002).

¶ 3 The Salt Lake City Justice Court assumed jurisdiction over the charge, pursuant to its statutory authority to hear charges of class B and C misdemeanors and violations of ordinances. *See* Utah Code Ann. § 78–5–104(1) (2002). Newman filed a motion to dismiss the charge, arguing that the ordinance unconstitutionally conflicts with the Utah assault statute. The justice court denied the motion.

¶ 4 Newman asserts that under federal law, the military may discharge him if he is convicted of any charge related to domestic violence, even if the charge is overturned on appeal. Yet, Utah Code section 78–5–120(3) provides that a defendant can only appeal a justice court ruling in the district court after the justice court convicts and sentences him. *See* Utah Code Ann. § 76–5–120(3)(c) (2003). To avoid the potential repercussions of going to trial, Newman filed a petition for extraordinary relief in the Third District Court, asserting that the justice court failed to perform an act required by law and abused its discretion. The district court denied Newman's petition. Newman challenges the district court's denial.

## ISSUE AND STANDARD OF REVIEW

¶ 5 We review whether Newman may use a petition for extraordinary relief in these circumstances and whether the district court erred in denying Newman's petition for extraordinary relief. We review "the trial court's conclusions of law for correctness." *State v. Rees,* 2003 UT App 4, ¶ 3, 63 P.3d 120.

## ANALYSIS

■ ¶ 6 As a preliminary matter, although the State did not cross-appeal, it nonetheless argues that the district court was right to dismiss Newman's petition for extraordinary relief because the standard process for appealing was adequate. "For criminal cases originating in justice courts, a defendant is provided an appeal through 'a trial de novo in the district court.'" *Lucero v. Kennard,* 2004 UT App 94, ¶ 9, 89 P.3d 175 (quoting Utah Code Ann. § 78–5–120(1)). But, a defendant cannot appeal unless he has either pleaded guilty or been convicted in justice court. *See* Utah Code Ann. § 78–5–120(1)(a), (3).

¶ 7 However, "[i]t shall be unlawful for any person ... who has been convicted in any court of a misdemeanor or crime of domestic violence ... to ship ... or possess ... any firearm or ammunition." 18 U.S.C.A. § 922(g)(9) (2004). In light of this provision, Newman believes that he could not lawfully perform duties required of his military service and would thus be discharged before having the opportunity to appeal his plea or conviction through the ordinary procedures. Accordingly, Newman filed a petition for extraordinary relief in the district court to challenge the justice court's ruling on his motion to dismiss.

■ ¶ 8 Utah Rule of Civil Procedure 65B(a) provides that a person may petition a higher court for extraordinary relief when no "plain, speedy, and adequate remedy" is available. Utah R. Civ. P. 65B(a). While negative consequences usually (and appropriately) flow from a criminal conviction, some convictions, even if later overturned, scar an individual's life in a permanent and extraordinary way. Trial de novo in a district court may not always be a "plain, speedy, and adequate remedy." *Id.* Thus, in truly exceptional circumstances, a individual may "correctly seek[ ] relief in the form of a petition for extraordinary relief" to challenge a justice court ruling. *Cahan v. Boyden,* 2003 UT App 116, 2003 WL 21289369 (mem.) (per curiam). We believe that to be the case here for three reasons: (i) the repercussion for Newman is all but guaranteed, (ii) the loss, his military service, represents something much more significant in the lives of those who serve than a mere job, and (iii) the penalties for convictions for class B and C

misdemeanors are meant to be in proportion to the crime, not to punish the individual for the remainder of his life.

¶ 9 However, under Utah Rule of Civil Procedure 65B(d)(2), we may grant a writ for extraordinary relief only when a lower court (i) "has exceeded its jurisdiction or abused its discretion," (ii) "has failed to perform an act required by law," or (iii) "has refused the petitioner the use or enjoyment of a right or office." Utah R. Civ. P. 65B(d)(2)(A)-(C).[1] Hence, in order for a court to grant Newman relief, he must show that a lower court exceeded its jurisdiction, abused its discretion, or failed to perform a required act.

 ¶ 10 The crux of Newman's argument is that the justice court blundered, and the district court erred in failing to recognize the justice court's blunder, because the justice court failed to rule that the ordinance unconstitutionally conflicts with the state assault statute. "[O]rdinances passed by municipalities are valid unless they are inconsistent or conflict with state law." *Salt Lake City v. Roberts*, 2000 UT App 201, ¶ 4, 7 P.3d 789, *rev'd on other grounds*, 2002 UT 30, ¶ 31, 44 P.3d 767; *see also*, Utah Code Ann. § 10-8-84 (2003). An "ordinance need not be identical to the controlling state statute to be consistent with it." *Richfield City v. Walker*, 790 P.2d 87, 90 (Utah Ct.App.1990).

 ¶ 11 " '[A]n ordinance is in conflict if it forbids that which the statute permits.' " *Id.* at 91 (quoting *Salt Lake City v. Kusse*, 97 Utah 113, 93 P.2d 671, 673 (1938)). In contrast, ordinances "are not inconsistent" with state law "when they share a common purpose and are 'closely related in subject matter.' " *Roberts*, 2000 UT App 201 at ¶ 4, 7 P.3d 789 (quoting *Salt Lake City v. Allred*, 20 Utah 2d 298, 437 P.2d 434, 437 (1968)).[2]

¶ 12 The ordinance at issue in this case provides "[a] battery is any wilful and unlawful use of force or violence upon the person of another. It is unlawful for any person to commit a battery within the limits of the city." Salt Lake City, Ut., Code § 11.08.020 (2003). The statute, however, defines assault as:

> (a) an attempt, with unlawful force or violence, to do bodily injury to another; (b) a threat, accompanied by a show of immediate force or violence, to do bodily injury to another; or (c) an act, committed with unlawful force or violence, that causes bodily injury to another or creates a substantial risk of bodily injury to another.

Utah Code Ann. § 76-5-102(1) (2003). In short, the statute requires that an act of assault either cause or create the danger of physical injury, whereas the ordinance omits the injury aspect. *See id.* § 76-5-102(1)(c); Salt Lake City, Ut., Code § 11.08.020. But, the statute also criminalizes attempts and threats to injure. *See* Utah Code Ann. § 76-5-102(1)(a), (b).

¶ 13 Newman argues that the state law is a specific intent crime, but without the element of causing injury, the ordinance is only a general intent crime. The Utah Code requires that, unless the legislature has clearly indicated an intent to create a strict liability crime, the minimum required mens rea is recklessness. *See* Utah Code Ann. § 76-2-102. The code defines "reckless" as conduct in which a person "is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 76-2-103(3) (2003). State law defines "[a]ct" as "a voluntary bodily movement." *Id.* § 76-1-601(1) (2003). Thus, read together, the Utah Code requires

---

1. Because Newman makes no claim that the third situation applies to this case, we will not address it.

2. In order to conflict, the ordinance must literally prohibit that which the statute allows. "Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not to be deemed inconsistent because of mere lack of uniformity in detail." *Richfield City v. Walker*, 790 P.2d 87, 90 (Utah Ct.App.1990) (quotations and citation omitted). And, "the fact the municipal ordinance does not encompass all the pro-

scriptions of the state regulation does not render it in conflict with that statute." *Id.* For example, in *Salt Lake City v. Kusse*, 97 Utah 113, 93 P.2d 671 (Utah 1938), a state law prohibited driving on "any highway" within the state while intoxicated. A city ordinance prohibited driving on any city street while intoxicated. *See id.* The court held that the two laws did not unconstitutionally conflict because the state law did not explicitly permit driving while intoxicated on streets but not highways. *See id.* at 675.

that, to commit assault, at the least, one must consciously disregard the risk of attempting, threatening with a show of force, or making a voluntarily bodily movement that results in injury to another. *See id.; id.* §§ 76–5–102(1), –2–102, –2–103(3).

¶ 14 On the other hand, the ordinance requires that the conduct be "wilful and unlawful," Salt Lake City, Ut., Code § 11.08.020, and elaborates " '[w]ilfully,' ... means and implies simply a purpose or willingness to commit the act," *id.* § 1.04.010(C)(21). Thus, under the ordinance, to commit battery, one must willingly use force against another. *See id.; id.* § 11.08.020.

█ ¶ 15 Hence, in contrast to the state law, the ordinance requires a greater culpable mental state, does not prohibit attempts and threats, and requires that the acts take place within Salt Lake City. *See id.* "[W]here the legislature prohibits the citizens from doing some act," "in certain limited instances," "there is no basis to imply that the legislature intended that cities and counties should not add additional provisions." *Allgood v. Larson,* 545 P.2d 530, 532 (Utah 1976). For example, in *Salt Lake City v. Howe,* 37 Utah 170, 106 P. 705 (1910), a Salt Lake City ordinance required that all milk sellers in the city limits have a permit. *See id.* at 706. But, the legislature had previously "creat[ed] the office of a state dairy and food commissioner ... regulating sanitary conditions of premises where cows are kept, and forbidding the sale of adulterated ... dairy products, including milk." *Id.* at 707. Nonetheless, the court concluded that the ordinance was "not inconsistent with the statute," even though both dealt with the sale of milk, "so long as the municipality did not forbid that which was licensed or permitted by the state." *Id.*

¶ 16 The differences between the milk laws in *Howe* are much like the differences between the assault statute and the battery ordinance in this case. While both laws address the use of force against another, the ordinance does not permit attempted or threatened assaults, and it does not permit a battery that causes bodily injury. Instead, the laws merely "share a common purpose and are closely related in subject matter."

*Salt Lake City v. Roberts,* 2000 UT App 201, ¶ 4, 7 P.3d 789, *rev'd on other grounds,* 2002 UT 30, ¶ 31, 44 P.3d 767 (quotations and citation omitted).

## CONCLUSION

¶ 17 The Salt Lake City ordinance "is not inconsistent with the [state] statute." *Howe,* 106 P. at 707. And, this is a circumstance in which the city is permitted to "add additional provisions." *Allgood,* 545 P.2d at 532. Thus, the ordinance does not unconstitutionally conflict with the statute. Neither the district court nor the justice court erred, exceeded its jurisdiction, abused its discretion, or failed to perform a required act. Accordingly, although we recognize Newman's right to petition for an extraordinary writ, the district court's ruling denying the writ was legally correct.

DAVIS, Judge (concurring in part, dissenting in part):

¶ 18 I concur with the lead opinion's conclusion that a trial de novo in a district court may not always be a "plain, speedy[,] and adequate remedy." Utah R. Civ. P. 65B(a). I also agree with the lead opinion's recognition of Newman's right to petition for an extraordinary writ and the trial court's hearing and ruling thereon, although I would not limit the right to petition for an extraordinary writ to "truly exceptional" circumstances. However, I believe that the ordinance unconstitutionally conflicts with the Utah assault statute. *See* Utah Const. art. XI, § 5 (granting cities the authority "to adopt and enforce within its limits ... regulations not in conflict with the general law").

¶ 19 The lead opinion notes that "ordinances passed by municipalities are valid unless they are inconsistent or conflict with state law," *Salt Lake City v. Roberts,* 2000 UT App 201, ¶ 4, 7 P.3d 789, *rev'd on other grounds,* 2002 UT 30, 44 P.3d 767, and that "[m]unicipal ordinances and state law are not inconsistent when they share a common purpose and are 'closely related in subject matter.' " *Id.* (quoting *Salt Lake City v. Allred,* 20 Utah 2d 298, 437 P.2d 434, 437 (1968)). Moreover, the lead opinion also recognizes

that "an ordinance is in conflict if it forbids that which the statute permits." *Richfield City v. Walker*, 790 P.2d 87, 91 (Utah Ct.App. 1990) (quotations and citation omitted). However, the lead opinion nevertheless concludes that the ordinance does not constitutionally conflict with the statute because the ordinance does not "forbid[ ] that which the statute permits." *Id.* (quotations and citation omitted).

¶ 20 While I agree with the lead opinion that the ordinance may not be inconsistent with the statute, the ordinance plainly conflicts with the statute, which, unlike the ordinance, requires that an act constituting the State equivalent of battery "cause[ ] bodily injury to another or create[ ] a substantial risk of bodily injury to another." Utah Code Ann. § 76–5–102(1)(c) (2003). By omitting the injury, or substantial risk of injury, element of the offense, the City has forbidden activity that the statute permits. Under the proper circumstances, a person could be convicted of battery under the ordinance for bodily contact that under the statute would be considered innocuous.

¶ 21 Because the justice court allowed the City to proceed with its charge against Newman under an unconstitutional ordinance, the court lacked subject matter jurisdiction. *See State v. Norris*, 2004 UT App 267, ¶ 7, 97 P.3d 732 ("Because a facial challenge to the constitutionality of a statute directly cuts to the power and authority of the court to determine a controversy, it is necessarily a jurisdictional matter." (quotations and citation omitted)), *cert. granted*, 106 P.3d 743 (Utah 2004). Furthermore, because the justice court proceeded under an unconstitutional ordinance, and thereby lacked subject matter jurisdiction, the trial court should have granted Newman's petition for extraordinary relief. *See* Utah R. Civ. P. 65B(d)(2)(A) ("Appropriate relief may be granted: (A) where an inferior court ... has exceeded its jurisdiction or abused its discretion...").

THORNE, Judge (concurring and dissenting):

¶ 22 I concur with the result reached in Judge Jackson's opinion, but do so with one reservation. This case presents itself as an appeal from the district court's rejection of Newman's argument for a writ of mandamus. The State, however, did not cross-appeal to argue that the trial court erred in accepting the writ and reviewing its merits. Thus, the propriety of that decision is not properly before us. Considering the State's failure to cross-appeal, we ordinarily would not address the subject of mandamus. But if we are to address the issue, as the lead opinion does here, we should inform the trial court that accepting the writ was an error under these circumstances.

¶ 23 Over 100 years ago, the United States Supreme Court explained that "[t]he general principle which governs proceedings by mandamus is, that whatever can be done without the employment of that extraordinary remedy, *may not be done with it.* It only lies when there is practically *no other remedy*." *Ex parte Rowland*, 104 U.S. 604, 617, 26 L.Ed. 861 (1882). Soon thereafter, the Utah Supreme Court noted that

[m]andamus will not lie when there is a remedy by appeal or writ of error,—that is, it will not take the place of an appeal or a writ of error—and is not the proper remedy to be resorted to to compel an inferior court or judicial tribunal to reverse a decision already made, and the writ does not lie to revise judicial action. The relator must show that he cannot appeal, to make out a right to a mandamus.

*State v. Booth*, 21 Utah 88, 59 P. 553, 555 (1899) (quotations and citation omitted). Time has not altered this view of mandamus relief. For instance, the Tenth Circuit Court of Appeals recently held that "the remedy of a future appeal from a final judgment ... is inadequate and therefore justifies mandamus only when the appeal is totally unavailable or when it cannot correct extraordinary hardship because of the particular circumstances." *In re Commercial Fin. Servs., Inc.*, 97 Fed.Appx. 238, 239 (10th Cir.2004) (per curiam) (alterations in original) (quotations and citations omitted). The exceptional circumstances that permit mandamus relief in criminal cases are extremely limited, and they are comprised of writs to confine a district court to the lawful exercise of its discretion or to compel it to exercise its

proper jurisdiction. *See Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967). In the absence of one of these circumstances, "appellate review should be postponed ... until after final judgment has been rendered by the trial court." *Id.* at 96, 88 S.Ct. 269. Finally, our own Utah Supreme Court long ago held that although the decision to grant a writ of mandamus is largely at the court's discretion, "mandamus is not a proper procedure to test the constitutionality of a statute." *L.J. Mueller Furnace Co. v. Crockett,* 63 Utah 479, 227 P. 270, 272 (1924). However, the court also cautioned that "there may be cases in which the constitutional question involved is so clear and free from doubt and the relief demanded so meritorious, that the court in the interest of justice should exercise its discretion by granting the writ." *Id.* at 273–74 (noting also that "the writ of mandate should not be granted where there is a plain[,] speedy, and adequate remedy at law"); *see also Richards v. Weber County Irrigation Dist.,* 63 Utah 298, 225 P. 600, 602 (1924) ("It is elementary that a writ of mandate will not issue when there is another plain, speedy, and adequate remedy.").

¶ 24 Newman has yet to be convicted in this case, but if he is he has a "plain[,] speedy, and adequate remedy at law," and therefore he should be precluded from seeking relief through a writ of mandamus. *L.J. Mueller,* 227 P. at 274. Newman's existing remedy, frankly, provides him with a greater potential for relief from a conviction than he would have with a traditional appeal in this court. *See Bernat v. Allphin,* 2005 UT 1, ¶¶ 21, 26, 106 P.3d 707. If he is convicted, he has the right to seek a trial de novo in the district court, an opportunity that allows him to evaluate the strengths of the State's case, and to design his defense to meet a case he has already seen. *See* Utah Code Ann. § 78–5–120(1) (2002). The State must then prove, beyond a reasonable doubt, that he is guilty, a task that will be made more difficult because of Newman's ability to anticipate the State's case.

¶ 25 In his lead opinion, Judge Jackson seems to suggest that the trial court properly accepted the writ because of what can only be described as a potentially upsetting collateral consequence that could result if Newman is convicted. Newman faces the *possibility* of losing his *possible* military career. I do not believe that this constitutes such a compelling need as to warrant mandamus relief. While Newman *may* well encounter such a sanction, he must first be convicted, which is certainly not a foregone conclusion. Then, the military must institute proceedings, which may result in sanctions at the military's discretion. Moreover, Newman has the opportunity to challenge directly any conviction that may occur, rather than through a writ of mandate. In my opinion, if the relief available to Newman upon his conviction is sufficiently inadequate to warrant the acceptance of his writ, then we face a deluge of similar writs from defendants who have yet to be convicted. Each of these writs will complain of similar collateral consequences—possible job loss, denial or revocation of a professional license, damage to reputation—and each of them will have a trial de novo in the district court as its only appellate option if the defendant is convicted. I do not think that the majority intends such a result, nor do I believe that such a result is supported by case law; but that result seems destined to occur with today's opinion.

¶ 26 Furthermore, although Newman's writ seeks to prevent possible future collateral consequences, it does so by attacking the trial court's pretrial ruling concerning the constitutionality of a city ordinance. Making such a ruling, whether or not correct, lies squarely within the trial court's discretion, and ought not be subject to attack through the filing of a mandamus writ. *See L.J. Mueller,* 227 P. at 272.

¶ 27 As articulated by Judge Jackson, the statute is constitutional. Thus, Newman's petition does not present a claim that is "clear and free from doubt," nor is the relief he requests "so meritorious, that the court in the interest of justice should exercise its discretion by granting the writ." *Id.* at 273–74. Consequently, although the question is not properly before this court, I believe that the trial court erred in accepting the writ and addressing its merits. I also believe that the majority's position on the availability of mandamus relief is at odds with existing case law.

Because we need not address the issue at all, the opinion should not address the propriety of Newman's writ.[1]

¶ 28 Finally, I believe that Judge Jackson's analysis concerning the constitutionality of the Salt Lake City ordinance is sound. Accordingly, I concur in his conclusions regarding the ordinance. However, I dissent from the majority's decision to address the propriety of Newman's writ, and, assuming that the question was properly before us, from its conclusions that the writ is a proper vehicle to challenge the trial court's ruling.

---

1. Moreover, the circumstances that Newman argues merit our review of his writ are not sufficiently extraordinary in scope to warrant the examination of his criminal trial in such a piecemeal fashion. *See Will v. United States,* 389 U.S. 90, 93 n. 2, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967) (noting that the court of appeals below had found that " 'the order subject of the petition is not an appealable order, and a review of it would offend the policy against piecemeal appeals in criminal cases' " (citation omitted)). Instead, Newman's case, like most criminal cases, is better reviewed as a whole if he is convicted.