Jimmy A. LAMPLEY, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

No. A–8994.

Court of Appeals of Alaska.

May 4, 2007.

David R. Weber, Vasquez & Weber, P.C., Anchorage, for the Appellant.

Rachel Plumlee, Assistant Municipal Prosecutor, John E. McConnaughy III, Deputy Municipal Attorney, and Frederick H. Boness, Municipal Attorney, Anchorage, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Jimmy A. Lampley was convicted of violating the Anchorage ordinances that prohibit driving under the influence (DUI), refusal to submit to a chemical test, and driving while one's license is suspended or revoked.[1] In this appeal, Lampley challenges various aspects of his trial, his sentencing, and his resentencing.

As we explain in this opinion, we reject most of Lampley's claims of error. However, we agree with Lampley with respect to two claims. First, Lampley's jury was misinstructed regarding the culpable mental state that the Municipality had to prove to establish the municipal offense of driving with a suspended or revoked license. Second, the district court violated the Alaska Constitution's guarantee against double jeopardy when, at Lampley's second sentencing, the court increased Lampley's time to serve.

For these reasons, we affirm Lampley's convictions for DUI and for breath-test refusal, but we reverse his conviction for driving with a suspended or revoked license. In addition, regardless of whether Lampley is re-tried and re-convicted of this latter crime, the district court must reduce Lampley's sentence so that it does not exceed the composite sentence he originally received.

*Underlying facts and proceedings*

In the early morning of April 10, 2004, Anchorage Police Sergeant Robert Glen (driving an unmarked police car) found himself stopped behind Lampley at a red light at the corner of Concrete Street and Fifth Avenue. While the light was still red, Lampley spun his tires and made a left turn onto Fifth Avenue. Sergeant Glen followed and caught up with Lampley. Because Lampley was speeding and driving aggressively, Glen turned on his flashing lights and pulled him over. Glen also summoned a backup officer, and Officer Michael E. Wisel responded.

During their contact with Lampley, both Glen and Wisel observed that Lampley had watery eyes, that his speech was slurred, and

---

1. AMC 9.28.020.A, AMC 9.28.022.C, and AMC 9.28.019.B, respectively.

that he had an odor of alcoholic beverages. Lampley admitted to drinking at several bars, and he also said he was taking medication for back pain.

Wisel administered field sobriety tests to Lampley, and Lampley did poorly on these tests. At this point, Wisel placed Lampley under arrest for driving under the influence.

Wisel drove Lampley to the Fourth Avenue Police Substation for DUI processing. At the substation, Wisel waited for fifteen minutes (the prescribed observation period), and he then notified Lampley that Lampley was required to submit to a breath test. When Wisel asked Lampley if he would submit to the test, Lampley first refused to respond, and then he shook his head to indicate that he would not submit to the test. Based on this conduct, Lampley was charged with breath-test refusal.

At the time of these events, Lampley's driver's license was suspended. Kerry Hennings from the Alaska Division of Motor Vehicles testified at trial that Lampley's driver's license had expired on June 10, 1995, and that his license was suspended on September 2, 1999.

The Division of Motor Vehicles mailed a notice of suspension to the address that they had for Lampley in their records, but this notice was returned to them as undeliverable. However, Alaska State Trooper David Herrell testified at Lampley's trial that, on July 6, 2003, he advised Lampley that his driver's license was suspended.

Lampley took the stand at his trial and testified that he was incarcerated at the Spring Creek Correctional Center when his license was suspended, which would potentially explain why the DMV's written notice of suspension was returned to them. Lampley also denied that Trooper Herrell had ever told him that his license was suspended. Lampley conceded that he had been cited for driving with a suspended license in September of 2003, but he claimed that someone at the Anchorage Municipal Attorney's office told him that this charge was dismissed because he in fact had a valid license.

Nevertheless, on cross-examination, Lampley admitted that he had been convicted of driving with a suspended license in 1992 and again in 1993, and that he had never gone to get a new driver's license since then. Further, Lampley admitted that he did not possess a physical driver's license when he was pulled over by Sergeant Glen on April 10, 2004.

With regard to the other two charges (driving under the influence, and refusal to submit to a breath test), Lampley denied that he had been under the influence and he further denied that he had refused the breath test. Lampley testified that he had been driving normally and that he had only drunk half a beer, several hours before he was pulled over. He claimed that he had trouble performing the field sobriety tests because of his bad back, and he explained that he ran the red light because his passenger pushed the gas pedal. In addition, Lampley testified that he never entered the Fourth Avenue police substation and that he was never offered—and thus, did not refuse—a breath test.

The jury convicted Lampley on all three counts.

Lampley was originally sentenced as a second DUI offender. At that first sentencing, the district court imposed a sentence of 200 days with 170 days suspended (30 days to serve) for the DUI, a consecutive sentence of 200 days with 170 days suspended (30 days to serve) for the breath-test refusal, and a consecutive sentence of 180 days with 150 days suspended (30 days to serve) for driving with a suspended license. All told, Lampley received 90 days to serve.

Later, while this appeal was pending, the Municipality discovered that Lampley had two prior convictions for DUI or breath-test refusal, not just one. This meant that Lampley was subject to a higher mandatory minimum sentence—60 days' imprisonment—on both the DUI and the breath-test refusal charges.[2] Accordingly, the Municipality filed a motion asking us to remand Lampley's case to the district court so that his sentence could be corrected. We granted that motion.

---

**2.** AMC 9.28.020.C.1.c; AMC 9.28.022.D.1.c.

On remand, the district court sentenced Lampley to consecutive sentences of 60 days to serve (200 days with 140 days suspended) on both the DUI and the breath-test refusal convictions. This meant that Lampley's composite time to serve now equaled 150 days. In other words, the district court increased Lampley's time to serve by 60 days.

*Lampley's Batson challenge during jury selection*

■ During jury selection, Lampley raised a *Batson* objection when the municipal prosecutor exercised a peremptory challenge against a Native American juror. In *Batson v. Kentucky*,[3] the United States Supreme Court held that the equal protection clause of the federal constitution bars a prosecutor from challenging a juror on the basis of the juror's race.[4] This juror stated during *voir dire* that he had been convicted of DUI three times, and that he was recovering from alcohol and drug abuse. The district court rejected Lampley's *Batson* objection:

> *The Court:* [T]he explanation that was given to me [by the prosecutor] at the sidebar [conference] was that [this juror] has three prior DUI's, and this is a DUI trial. I think that's a [race-]neutral explanation. And that's why I'm denying the *Batson* challenge. . . .

Lampley argues that the district court erred by failing to decide whether the prosecutor was being honest in offering this explanation for the peremptory challenge. But though the district judge did not expressly state that she believed the prosecutor's explanation, we conclude that this finding is implicit in her remarks. It is undisputed that the prospective juror had three prior convictions for DUI, and there is no indication that the judge had any doubt as to whether this was the honest reason for the prosecutor's peremptory challenge. We find no error.

*Lampley's challenges to the prosecutor's statements during the rebuttal portion of the State's summation*

Lampley contends that he is entitled to a new trial because the prosecutor engaged in improper argument during the rebuttal portion of the Municipality's summation, and because the trial judge failed to give curative instructions to the jury.

■ A prosecutor's statements to the jury during summation will require reversal of a criminal conviction only if the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process".[5] Here, none of the prosecutor's challenged comments created or even threatened this level of unfairness.

Lampley objects to the following statements of the prosecutor, made in response to Lampley's argument that much of the evidence against him had been fabricated:

> [I]f you . . . find [that there has been] a conscious effort to mislead you, [then you should] find [Lampley] not guilty of all the charges, because that's the right thing to do. And I can stand here and say that, because there is no misleading. This officer is not misleading anybody.

A few minutes later, the prosecutor returned to this theme:

> We . . . know [that] there were other officers [too]. That means all of them were in on it. The magistrate, he's in on it; the tape, fabricating evidence. By the time we get done here, . . . I'll be prosecuting Officer Wisel. It's just not true. Tell him it's not true. Find him guilty.

Lampley argues that the prosecutor's statements invited the jury to shift the burden of proof to the defense. We disagree. Nothing in these statements addressed the burden of proof.

■ Lampley also argues that, in these two statements, the prosecutor was improperly vouching for the veracity of police witnesses. The prosecutor's remarks were

---

**3.** 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

**4.** *Id.*, 476 U.S. at 89, 106 S.Ct. at 1719.

**5.** *Darden v. Wainwright*, 477 U.S. 168, 169, 106 S.Ct. 2464, 2466, 91 L.Ed.2d 144 (1986).

made in the context of Lampley's attack on the various law enforcement officers' testimony. As explained above, Lampley testified that, on the night of his arrest, he never went into the Fourth Avenue substation, much less refused the breath test. And Lampley further insisted that Trooper Herrell was lying when he testified that he informed Lampley that his license was suspended. Given Lampley's assertions at trial, the prosecutor could properly argue that the officers had been telling the truth, so long as the prosecutor did not declare or insinuate that his argument rested on his own personal assessment of the officers' credibility, or on information that had not been presented as evidence during Lampley's trial.

See *Darling v. State*, 520 P.2d 793 (Alaska 1974), where our supreme court stated:

> [The defendant] asserts [that] the prosecutor's [summation] exceeded the bounds of propriety. On three occasions[,] counsel for the government alluded to the fact that [the] state's chief witness was a "sworn police officer"[,] and on one occasion [the prosecutor] argued that this undercover agent was "absolutely truthful." We find nothing in these statements, standing either by themselves or in the full context in which they were made, which constitutes a violation of the rule barring counsel from personally vouching for the credibility or reliability of a witness.

*Darling*, 520 P.2d at 794 n. 6.

Lampley argues that when the prosecutor stated, "By the time we get done here, ... I'll be prosecuting Officer Wisel," the prosecutor was implicitly assuring the jurors that the officer was telling the truth (because the officer was not being prosecuted for perjury or other misconduct). But taking this remark in context, it is doubtful that the jurors understood the prosecutor to be personally vouching for the officer's testimony. Rather, it appears that the prosecutor was emphasizing the fact that Lampley's defense rested on the questionable assumption of a far-ranging conspiracy to distort the truth and fabricate evidence.

■ Lampley also challenges the prosecutor's comment during summation that "[d]enial has been a tradition since Cain", and

that the jurors had seen another example of denial in Lampley's case. Lampley argues that the prosecutor was improperly comparing Lampley to Cain, and that the prosecutor was also improperly arguing that the Bible somehow showed that Lampley was guilty.

We disagree. As noted above, Lampley testified that he was not intoxicated, that he never was taken inside the police substation and offered a breath test, and that he never received any notice that his license was suspended. The officers testified otherwise. The prosecutor could properly argue that the jurors should believe the officers and should conclude that Lampley was falsely denying his guilt.

In sum, the trial judge could properly overrule Lampley's objections to the foregoing arguments and could properly deny Lampley's requests for curative instructions.

Finally, Lampley objects to a portion of the rebuttal argument in which the prosecutor addressed the issue of whether Lampley had received notice that his driver's license was suspended or revoked. Lampley's objections to this portion of the prosecutor's summation are now moot—because, as we explain later in this opinion, Lampley's conviction for driving with a suspended license must be reversed.

*The jury instructions on the meaning of "reasonable doubt", the elements of DUI, and the elements of breath-test refusal*

■ Lampley challenges several of the instructions given to the jury. The first of these is the instruction on the concept of "reasonable doubt". This instruction stated, in pertinent part:

> The law presumes a defendant to be innocent of crime. Thus, a defendant, although accused, begins the trial with a clean slate—with no evidence favoring conviction. The presumption of innocence alone is sufficient to acquit a defendant, unless you are satisfied beyond a reasonable doubt of the defendant's guilt, after careful and impartial consideration of all the evidence in the case.

This last-mentioned requirement, that you be satisfied beyond a reasonable doubt of defendant's guilt, is what is called the burden of proof. It is not required that the prosecution prove guilt beyond all possible doubt, for it is rarely possible to prove anything to an absolute certainty. Rather, the test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense. Proof beyond a reasonable doubt must be proof of such a convincing character that, after consideration, you would be willing to rely and act upon it without hesitation in your important affairs. A defendant is never to be convicted on mere suspicion or conjecture. The burden of proving the defendant guilty beyond a reasonable doubt always rests upon the prosecution. This burden never shifts throughout the trial, for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence. . . .

Lampley argues that this instruction undermines the presumption of innocence by telling the jurors that a defendant begins a criminal trial with a "clean slate" and with "no evidence favoring" conviction. Lampley contends that this phrasing suggests that the scales are evenly balanced at the beginning of a criminal trial, rather than tipping heavily in favor of the defendant.

Lampley also objects to the statement in the instruction that the Municipality did not need to prove its case to an "absolute certainty". Lampley recognizes that we upheld this language in *Wilson v. State,*[6] but he argues that *Wilson* should be overruled. Lampley also argues that the instruction unlawfully shifted the burden of proof by telling the jurors that a reasonable doubt is a doubt "based upon reason and common sense". Lampley contends that this language seemingly tells the jurors that it is a defendant's burden to establish that any doubt concerning the defendant's guilt is reasonable.

We decline to overrule *Wilson*. We further find that the challenged instruction, taken as a whole, accurately explains the

presumption of innocence, the prosecution's burden of proving guilt beyond a reasonable doubt, and the definition of "reasonable doubt".

■ Lampley next challenges the judge's instruction on the elements of driving under the influence. The challenged instruction states that it was the Municipality's burden to prove that Lampley "knowingly" consumed alcoholic beverages and "knowingly" drove a motor vehicle. Lampley does not dispute that this is an accurate statement of law.[7] However, he points out that the Municipality's DUI complaint contained different language: "Jimmy Aaron Lampley did unlawfully and *intentionally* drive or operate a motor vehicle . . . while under the influence". (Emphasis added) Lampley argues that, because the Municipality included this language in the complaint, the Municipality was obliged to prove that Lampley intended to drive while under the influence.

It is true that the language of the complaint misdescribes the culpable mental state that must be proved to establish the offense. However, Lampley has not alleged that he detrimentally relied on this language or that he was otherwise prejudiced by the misstatement in the complaint. And, as explained in the preceding paragraph, Lampley concedes that the challenged jury instruction accurately states the law. Accordingly, it was not error for the judge to give this instruction to the jury.

■ Lampley also challenges the jury instruction on the elements of breath-test refusal. He argues that, under the Anchorage Municipal Code, the government must prove to the jury that there was probable cause for the defendant's arrest and that the defendant was otherwise lawfully arrested.

Anchorage Municipal Code § 9.28.021.A states that the operator of a motor vehicle consents to the administration of a chemical test for the purpose of determining the driver's blood alcohol content "if [the driver has been] lawfully arrested" for an offense that

6.  967 P.2d 98, 100–01 (Alaska App.1998).

7.  *See State v. Simpson,* 53 P.3d 165, 167 (Alaska App.2002) (citing *Morgan v. Anchorage,* 643 P.2d 691, 692 (Alaska App.1982)).

occurred while the person was driving under the influence. This same section further states that the chemical test shall be administered at the direction of a law enforcement officer who has "probable cause" to believe the person was driving under the influence.

However, we have repeatedly held that the legality of the driver's arrest is not an element of the crime of breath-test refusal; rather, any question concerning the legality of the arrest is a suppression issue to be decided by the judge. *Patterson v. Anchorage*, 815 P.2d 390, 392 (Alaska App.1991); *Brown v. State*, 739 P.2d 182, 187 (Alaska App.1987); *Skuse v. State*, 714 P.2d 368, 372 (Alaska App.1986).

Lampley suggests that we should re-examine these decisions in light of the United States Supreme Court's decisions in *United States v. Booker*,[8] *Blakely v. Washington*,[9] and *Crawford v. Washington*.[10] However, Lampley does not explain how any of these cases are relevant to the issue of statutory interpretation presented here.

We therefore conclude that the district court correctly instructed the jury on the elements of breath-test refusal.

*The erroneous jury instruction on the elements of driving with a suspended or revoked license*

■ Lampley also challenges the jury instruction defining the elements of driving while one's license is suspended or revoked. In this instruction, the jurors were told that the Municipality needed to prove that Lampley was negligent concerning the fact that his driver's license was suspended. Lampley argues that the true culpable mental state for this offense is "recklessness" rather than "negligence". We agree.

When this issue was raised at Lampley's trial, the district court concluded the issue was controlled by this Court's decision in *Gregory v. State*, 717 P.2d 428 (Alaska App. 1986). In *Gregory*, we held that the required

culpable mental state for the offense of driving with a suspended or revoked license was criminal negligence. *Id.* at 432.

But in *Gregory*, we were construing this offense as it is defined under *state* law in AS 28.15.291. Lampley was not charged with violating AS 28.15.291; rather, he was charged with violating the corresponding Anchorage ordinance, AMC 9.28.019.B.

The Anchorage Municipal Code expressly provides that "[i]f a provision of law defining an offense does not prescribe a culpable mental state, the culpable mental state that must be proved with respect to ... a circumstance or result is 'recklessly'." AMC 8.05.010.C.

Unlike the corresponding rule of statutory construction codified in AS 11.81.610(b), which applies only to the criminal offenses defined in Title 11 of the Alaska Statutes,[11] the rule of statutory construction codified in AMC 8.05.010.C applies to all offenses defined under municipal law. Accordingly, Anchorage municipal law specifies that "recklessly" is the culpable state that the government must prove to convict someone of driving with a suspended or revoked license as defined in AMC 09.28.019.B.

The Municipality concedes that its municipal law apparently calls for this result. But the Municipality argues that, in this situation, the rule of statutory construction codified in AMC 8.05.010.C is inconsistent with state law on the same subject, and thus AMC 8.05.010.C is unlawful to the extent that it requires a higher culpable mental state (proof of recklessness rather than proof of negligence). The Municipality urges us to declare that, because "criminal negligence" is the culpable mental state that must be proved under state law, no municipality has the authority to enact a corresponding ordinance that requires proof of a higher culpable mental state.

The Municipality's argument hinges on AS 28.01.010(a), which declares that "[a] municipality may not enact an ordinance that is

---

**8.** 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

**9.** 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

**10.** 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

**11.** AS 11.81.640.

inconsistent with the provisions of [Title 28 of the Alaska Statutes] or the regulations adopted under [that] title."

It is true that there is a discrepancy between the state and municipal definitions of the offense of driving with a suspended or revoked license. But not every discrepancy between state and municipal law amounts to an inconsistency for purposes of AS 28.01.010(a).

■ To determine whether a municipal ordinance is inconsistent with state law for purposes of AS 28.01.010(a), we assess the totality of the legislative framework within which the municipal ordinance and state statute are included.[12] The question is not merely whether there is some discrepancy between the two laws, but rather "whether any discrepancy ... impedes or frustrates [a] policy expressed by state law." [13]

For example, in *Adkins v. Lester*, 530 P.2d 11 (Alaska 1974), the Alaska Supreme Court considered whether there was an impermissible inconsistency between a state traffic regulation that permitted drivers of emergency vehicles to forego the use of audible signals and warning lights under certain circumstances, and a Fairbanks ordinance that required the use of audible signals at all times.[14] The supreme court held that the ordinance was inconsistent with the statute and, therefore, adoption of the ordinance was prohibited under state law.[15]

Likewise, in *Simpson v. Anchorage*, 635 P.2d 1197 (Alaska App.1981), this Court considered the discrepancy between the state statute prohibiting driving while under the influence of intoxicating liquor and the corresponding Anchorage ordinance which provided an alternative way of proving the crime— proof that the operator of the vehicle had a blood alcohol level of .10 percent or greater.[16]

We concluded that the municipal ordinance's blanket prohibition against driving with a blood alcohol level of .10 percent or greater, without regard to whether the driver was actually under the influence, was impermissibly inconsistent with the corresponding state statute.[17] We therefore struck down the ordinance.

But in *Cremer v. Anchorage*, 575 P.2d 306 (Alaska 1978), the Alaska Supreme Court concluded that there was no impermissible inconsistency between a state statute that prohibited driving a motor vehicle *on a public highway* while one's license was suspended, and a corresponding municipal ordinance that prohibited driving a motor vehicle *anywhere within the municipality* while one's license was suspended.[18] The supreme court concluded that the discrepancy between the statute and the ordinance—*i.e.*, the fact that the ordinance covered the driving of motor vehicles on private property as well as public highways—was not so inconsistent with state law as to be prohibited under AS 28.01.010(a).[19]

In the present case, Anchorage municipal law requires the government to prove that a driver was reckless, and not just negligent, with respect to the fact that the driver's license was suspended. By requiring proof of a higher culpable mental state, the Municipality has made it harder to prosecute people for driving with a suspended or revoked license under municipal law than it would be to prosecute these same people under state law. But we do not believe that this discrepancy amounts to an impermissible inconsistency.

As explained above, the question is whether the Municipality's enactment of a higher culpable mental state "impedes or frustrates" state policy.[20] It does not appear to. The

---

**12.** *Simpson v. Anchorage*, 635 P.2d 1197, 1200 (Alaska App.1981).

**13.** *Id.* at 1204. *See also Cremer v. Anchorage*, 575 P.2d 306, 307–08 (Alaska 1978); *Adkins v. Lester*, 530 P.2d 11, 13–15 (Alaska 1974).

**14.** *Lester*, 530 P.2d at 13–14.

**15.** *Id.* at 15.

**16.** 635 P.2d at 1200–08.

**17.** *Id.* at 1206–08.

**18.** 575 P.2d at 307–08.

**19.** *Id.* at 308.

**20.** *Simpson*, 635 P.2d at 1204; *Cremer*, 575 P.2d at 307–08.

State retains concurrent jurisdiction over traffic offenses within the Municipality of Anchorage; that is, the state statute prohibiting driving while one's license is suspended or revoked continues to apply within the Municipality of Anchorage. Thus, drivers who negligently ignore the fact that their license is suspended or revoked can still be prosecuted under state law, AS 28.15.291(a), even if they could not be successfully prosecuted under the municipal ordinance.

In *Salt Lake City v. Newman,* 113 P.3d 1007 (Utah App.2005),[21] the Utah Court of Appeals recently considered this same issue: whether a city government might properly enact a criminal ordinance that required a higher culpable mental state than the corresponding state statute. The state statute defined "assault" as recklessly creating a risk of injury, while the city ordinance defined "assault" as willfully using force against another.[22] The court concluded that the city ordinance was not impermissibly inconsistent with the state statute—because the state statute continued to apply, and because the municipal ordinance did not purport to authorize people to engage in conduct that was forbidden under the state statute.[23]

In *Spokane v. White,* 102 Wash.App. 955, 10 P.3d 1095 (2000), the Washington Court of Appeals recently considered the converse of the situation presented in Lampley's case—a local ordinance that required proof of a lesser culpable mental state than the corresponding state statute. The state statute defined "assault" as requiring proof of "intent", but the city ordinance only required proof that the defendant acted "willfully" or "knowingly".[24] The Washington court concluded that the statute and the ordinance were not impermissibly inconsistent. The court noted that the local ordinance

> does not attempt to authorize what the Legislature has forbidden; nor does it forbid what the Legislature has expressly licensed, authorized, or required. The ordinance merely differs from the state statute in the scope of the required mental culpability.

*White,* 10 P.3d at 1099.[25]

Like these cases from Utah and Washington, the Anchorage municipal ordinance at issue in Lampley's case does not authorize conduct that the Alaska legislature has forbidden, nor does it forbid conduct that the Alaska legislature has authorized. The Anchorage ordinance does not declare that it is legal to drive if you are merely negligent concerning the possibility that your license is suspended or revoked. Nor does the Anchorage ordinance purport to prohibit the State from enforcing its stricter statute within the geographic limits of the Municipality. The ordinance simply makes it harder for the Municipality to prosecute someone for the same conduct.

We therefore conclude that the challenged ordinance does not "impede or frustrate" state policy or the enforcement of state law—and, thus, there is no unlawful inconsistency between the Anchorage ordinance and the corresponding state statute. The Municipality of Anchorage may lawfully require proof of recklessness in prosecutions for driving while one's license is suspended or revoked.

This means that the jury instruction in Lampley's case erroneously described the culpable mental state that the Municipality was obliged to prove. As explained above, the jurors were told that the Municipality only needed to prove that Lampley acted with criminal negligence concerning the possibility that his license was suspended. In fact, however, the Municipality needed to prove that Lampley acted with recklessness.

■ This error was not harmless. Lampley actively disputed the Municipality's claim that he had been notified that his license was suspended. Lampley testified that he was in Spring Creek Correctional Center when his license was suspended and

---

21. *Affirmed,* 148 P.3d 931 (Utah 2006).

22. *Newman,* 113 P.3d at 1010–11.

23. *Id.* at 1011.

24. *White,* 10 P.3d at 1098.

25. *But see State v. Lopez–Vega,* 111 Or.App. 252, 826 P.2d 48, 50 (1992) (noting that it is at least arguable that a local ordinance that does not require a culpable mental state would be preempted by state statute that requires intent).

that he did not receive the notification from the Division of Motor Vehicles. Lampley also denied that Trooper Herrell ever told him that his license was suspended.

Lampley admitted that he had been convicted of driving with a suspended license in 1992 and 1993, that he had never gone to get a new driver's license since then, and that he had been cited for driving with a suspended license in September of 2003. However, Lampley claimed that someone at the Anchorage Municipal Attorney's office told him that his 2003 suspended license charge was dismissed because the Municipality determined that he had a valid driver's license.

Given this record, the jury's decision may well have hinged on the fact that they were erroneously told that the Municipality needed only to prove the lesser culpable mental state of negligence rather than the more exacting culpable mental state of recklessness. Accordingly, we reverse Lampley's conviction for this offense. He is entitled to a new trial on the charge of driving with a suspended or revoked license.

*Lampley's motion for a new trial*

Three weeks following his conviction, Lampley filed a motion for a new trial. In this motion, Lampley alleged that corrections officers had illicitly monitored his telephone communications with his lawyer, and that the Municipality had therefore obtained an improper advantage when preparing for trial. The district court denied this motion without a hearing.

Alaska Criminal Rule 33(c) states that a motion for a new trial must be made within five days of the verdict unless the motion is based on newly discovered evidence (in which case the motion must be made within 180 days of the final judgment). Lampley filed his motion three weeks after the verdict. Thus, at that point, his motion was untimely on any ground other than newly discovered evidence.

■ A motion for a new trial based on newly discovered evidence must meet the

following requirements: "(1) It must appear from the motion that the evidence relied on is, in fact, newly discovered, *i.e.*, discovered after the trial; (2) the motion must allege facts from which the court may infer diligence on the part of the [defendant]; (3) the evidence relied on must not be merely cumulative or impeaching; (4) [the evidence] must be material to the issues involved; and (5) [the evidence] must be such as, on a new trial, would probably produce an acquittal."[26]

■ In his motion for a new trial, Lampley asserted that his attorney-client communications were monitored by corrections officers:

> This was made plain to Mr. Lampley by correctional officers mimicking and repeating information and statements emanating from counsel's side of a privileged conversation.... This is not the first time Mr. Lampley's attorney-client communications have been monitored unlawfully.

We conclude that the district court did not have to decide whether Lampley's allegation was true—because the record discloses that Lampley was aware of this potential problem during his trial. On the morning of August 5, 2004—that is, on the second day of Lampley's four-day trial—Lampley told the trial judge that he had heard jail personnel making comments that indicated they were aware of the contents of Lampley's conversations with his attorney. But instead of asking the court to declare a mistrial, Lampley simply asked for an order directing jail personnel to stop monitoring his attorney-client conversations. The district court granted this request, ordering that all of Lampley's "attorney contact [shall] be unmonitored."

Given this record, Lampley's motion for a new trial under Criminal Rule 33(a) was untimely—because his claim was not based on newly discovered evidence. The district court could deny the motion on this basis alone.

■ Moreover, the record shows that Lampley was aware of the potential problem

---

**26.** *Garroutte v. State*, 683 P.2d 262, 267–68 (Alaska App.1984) (quoting *Salinas v. State*, 373 P.2d 512, 514 (Alaska 1962)).

during his trial, and yet he only sought (and obtained) relief short of a mistrial. Under Alaska law, Lampley was not entitled to gamble on the jury's verdict and then, three weeks after being convicted, raise this issue again in a motion for a new trial. In such circumstances, Alaska law bars a defendant from withholding a request for mistrial or new trial until the defendant has heard the jury's decision. *See Owens v. State*, 613 P.2d 259, 261 (Alaska 1980) (a defendant should not be allowed to "take a gambler's risk and complain only if the cards [fall] the wrong way"); *Turpin v. State*, 890 P.2d 1128, 1130 (Alaska App.1995).

As this Court said in *Allen v. State*, 51 P.3d 949, 953 (Alaska App.2002):

> When a [defendant] believes that an error requires early termination of the trial or other extraordinary relief (such as summoning a new jury panel), the [defendant] must ask the trial judge to take action when action is still possible. The claim of error can not be deferred until appeal.

This same principle applies to the circumstances of Lampley's post-verdict motion for a new trial. We accordingly conclude that the district court could properly deny Lampley's motion without holding a hearing on the merits of Lampley's claim.

*The district court could properly determine the number of Lampley's prior convictions without submitting this issue to a jury*

█ As explained above, Lampley was initially sentenced as a second offender. Later, the district court concluded that Lampley had two prior convictions for DUI or breath-test refusal, and the court therefore re-sentenced Lampley as a third offender.

Lampley argues that a jury, and not the sentencing judge, should have decided the issue of how many prior convictions he had. Lampley concedes that we held the opposite in *Huitt v. State*, 678 P.2d 415, 422–23 (Alaska App.1984), but he asks us to overrule *Huitt*.

█ Lampley has not provided us any convincing reason to revisit *Huitt*. He cites

27. 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

*Blakely v. Washington*,[27] a decision which expanded the Sixth Amendment right to jury trial in the context of presumptive sentencing. But this right to jury trial only comes into play when the resolution of a disputed factual issue will determine the defendant's maximum sentence. There is no Sixth Amendment right to jury trial when resolution of the factual issue affects only the defendant's mandatory minimum sentence, and does not alter the defendant's potential maximum sentence.

The United States Supreme Court explained this point in *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), where the Court held that a legislature does not violate the Sixth Amendment right to jury trial by increasing a defendant's *mandatory minimum* sentence (as opposed to the defendant's *maximum* sentence) based on aggravating facts that are tried to, and decided by, the sentencing judge.[28]

Under the Anchorage Municipal Code, all defendants convicted of DUI and all defendants convicted of breath-test refusal face the same maximum penalty: 1 year's imprisonment. *See* AMC 09.48.010.D.2. A defendant's prior convictions affect only the mandatory minimum penalty to which the defendant is subject. *See* AMC 09.28.020.C and AMC 09.28.022.D. Thus, a defendant has no Sixth Amendment right to jury trial with regard to these prior convictions, even if they are disputed.

*The district court violated the double jeopardy clause when, at Lampley's re-sentencing, the court increased Lampley's composite sentence for DUI and breath-test refusal*

After the district court concluded that Lampley had two prior convictions for DUI or breath-test refusal—in other words, that Lampley was a third offender for purposes of the mandatory minimum sentences set forth in AMC 09.28.020.C.1 and AMC 09.28.022.-D.1—the district court re-sentenced Lampley.

28. 536 U.S. at 557–569, 122 S.Ct. at 2414–2420.

▇▇ Lampley had originally received only 30 days to serve for each of the offenses of DUI and breath-test refusal. But AMC 09.28.020.C.1.c (the DUI ordinance) and AMC 09.28.022.D.1.c (the breath-test refusal ordinance) both require a mandatory minimum sentence of 60 days' imprisonment if a defendant is a third offender. Accordingly, after the district court discovered that Lampley was a third offender, the court re-sentenced Lampley and imposed these greater penalties. This was proper.

▇▇ Nevertheless, when a court corrects an illegally lenient sentence, the court can increase the sentence only to the extent necessary to correct the illegality.[29] The district court violated this principle in Lampley's case.

Under Alaska *state* law, a defendant convicted of both DUI and breath-test refusal must receive consecutive sentences for these offenses.[30] However, the Anchorage Municipal Code has no similar requirement. When a defendant is convicted of these two crimes under Anchorage municipal law, the sentencing judge may impose the two sentences concurrently.

It is true that Lampley originally received consecutive sentences for these two offenses. But, for present purposes, the important thing is that the district court had the discretion to impose the two sentences concurrently. Thus, when the district court discovered that Lampley was a third offender and that, as a consequence, Lampley's sentences for these two crimes would have to be increased to 60 days to serve, the district court had the authority to impose these greater mandatory minimum sentences but to make them concurrent—thus giving Lampley the mandatory minimum sentences that the law prescribed, but without increasing Lampley's total time to serve.

Altering the judgement in this manner would satisfy the municipal law's requirement of 60–day minimum sentences for the two offenses, but at the same time it would honor the double jeopardy clause of the Alaska Constitution by preserving Lampley's original composite sentence of 90 days to serve.

▇▇ The Municipality does not dispute that the Anchorage Municipal Code permits a judge to impose concurrent sentences for DUI and breath-test refusal. But again, the Municipality invokes AS 28.01.010(a)—arguing that this aspect of its municipal sentencing law is illegal because (according to the Municipality) the imposition of concurrent sentences in this situation would be inconsistent with state sentencing law.

We have already explained the test for deciding whether a discrepancy between state law and municipal law renders the two laws "inconsistent" for purposes of AS 28.01.010(a). Applying that test, we conclude that this discrepancy between state and municipal law is not a fatal inconsistency.

The core goal of AS 28.01.010(a)—the statute that requires statewide uniformity of traffic laws—is to ensure that motorists will not be subjected to a patchwork of differing traffic laws as they travel within this state. The fact that the district court may have differing sentencing authority, depending on whether a motorist is charged under state or municipal law, does not affect this statutory goal.

It is possible to argue that state policy is defeated when a municipality enacts a penalty that is different from the one provided by state law for the same underlying traffic misconduct. But our research of the case law in this area shows that, generally speaking, when a municipal ordinance provides a different penalty for criminal conduct, the ordinance will be invalidated only if it provides a *greater* penalty than the corresponding state statute.[31] That is not the case here.

Finally, one could argue that, because Anchorage sentencing law allows the district

**29.** *Curtis v. State,* 831 P.2d 359, 360 (Alaska App.1992); *Love v. State,* 799 P.2d 1343, 1346 (Alaska App.1990); *Dunham v. Juneau,* 790 P.2d 239, 241 (Alaska App.1990), *receded from on other grounds in Curtis,* 831 P.2d 359.

**30.** *See* AS 28.35.032(g)(5) and 032(p)(5).

**31.** *See, e.g., Rockford v. Floyd,* 104 Ill.App.2d 161, 243 N.E.2d 837, 842–43 (1968); *Louisiana v. Suire,* 319 So.2d 347, 350 (La.1975).

court to impose concurrent sentences for the two offenses of DUI and breath-test refusal, the Anchorage law undercuts the state policy of encouraging arrested motorists to submit to a breath test.

Even though motorists in Alaska are deemed to have impliedly consented to a chemical test of their breath if they are lawfully arrested for driving under the influence,[32] the police in most instances have no authority to physically force the motorist to submit to the test.[33] Instead, the legislature has made breath-test refusal a separately punishable crime,[34] and has made breath-test refusal an independent ground for administrative revocation of a motorist's driver's license.[35] The purpose of these laws, as we noted in *Bass v. Anchorage,* was to "provide[ ] extremely strong incentives to [an arrestee] to take a breath test".[36]

It appears that the legislature had a similar purpose when it mandated consecutive sentences for the separate offenses of DUI and breath-test refusal. Because of the mandated consecutive sentences, defendants who are convicted of both offenses know that they will serve additional jail time for the act of refusing the test. If a defendant knows about this sentencing provision, it becomes one more component of the government's effort to induce (or coerce) arrested motorists to take the breath test.

But although the requirement of consecutive sentencing might further the goal of having arrested motorists take the breath test, it operates in a much more attenuated fashion than the provisions of law that make breath-test refusal a separate crime and that make breath-test refusal an independent ground for administrative revocation of the arrestee's driver's license. These latter two provisions exert immediate pressure on the arrestee to take the test. The requirement of consecutive sentences, on the other hand,

makes a difference only in the long run—and only if the defendant is indeed convicted of both offenses.

The legislature itself appears to have recognized this distinction in AS 28.35.032(a), the statute that specifies the warnings that arrested motorists must receive before they can be charged with the separate offense of refusing a breath test. This statute says that, before an arrested motorist refuses the breath test, the motorist must be advised

that the refusal will result in the denial or revocation of the [arrestee's] driver's license, ... that the refusal may be used against the [arrestee] in a civil or criminal action ... arising out of an act alleged to have been committed by the person while operating a motor vehicle or aircraft while under the influence of an alcoholic beverage, ... and that the refusal is a crime....

Notably lacking here is any requirement that the arrested motorist be advised that, if the motorist is ultimately convicted of both DUI and breath-test refusal, the sentencing judge will be obliged to impose the applicable mandatory minimum sentences of imprisonment consecutively.

We conclude that the legislature omitted this warning because the legislature concluded that any conditional threat of consecutive sentences is simply too remote to have any substantial effect on the arrested motorist's decision-making—that this conditional threat is unlikely to alter the motorist's decision to refuse the test if the motorist has already been apprised of the three major consequences listed in the statute.

For similar reasons, we conclude that the municipal sentencing provision that allows concurrent sentences in these circumstances is not fatally "inconsistent" with state law for purposes of AS 28.01.010(a). Although one could argue that the possibility of concurrent

---

**32.** AS 28.35.031(a).

**33.** *See Bass v. Anchorage,* 692 P.2d 961, 964 (Alaska App.1984) ("In the implied consent statutes, the legislature has gone to great lengths to avoid authorizing the police to forcibly [administer] blood alcohol tests [on] defendants charged with driving while intoxicated [except as provided in AS 28.35.035].").

**34.** AS 28.35.032(f).

**35.** AS 28.15.165.

**36.** 692 P.2d at 964.

sentences might conceivably reduce the pressure on arrested defendants to take the breath test, any such effect appears to be speculative and remote. The main pressure to take the test comes from the more immediate consequences listed in AS 28.35.032(a): being charged with a separate crime, having one's driver's license revoked, and the fact that the refusal can be used against the arrestee in a later civil or criminal action.

We conclude that this discrepancy between state and municipal sentencing law does not significantly impede or frustrate a policy under state law—and that, therefore, this discrepancy does not rise to the level of an "inconsistency" for purposes of AS 28.01.010(a).

■ Because the municipal sentencing provision is valid—*i.e.,* because the district court could lawfully impose Lampley's sentences for DUI and breath-test refusal concurrently—the district court was obliged to exercise this authority when the court re-sentenced Lampley.

As explained above, Lampley had to be re-sentenced because his initial sentences for these two offenses—two consecutive sentences of 30 days—were illegally lenient. The district court was obliged to fix this sentencing problem in a way that increased Lampley's sentence to the least extent possible.

Because concurrent sentences are an option under municipal law, the district court could impose the mandated 60–day minimum sentences for DUI and breath-test refusal without increasing Lampley's composite time to serve—by making these 60–day sentences concurrent. And because this option existed, the district court was constitutionally required to follow it.

*The district court did not violate the due process clause, the double jeopardy clause, or the doctrines of equitable estoppel or laches when the court re-sentenced Lampley after he had already finished serving his original sentence*

Finally, Lampley argues that his re-sentencing violated the guarantee against double jeopardy, as well as the principles of due process, equitable estoppel, and laches, because he had already served his sentence at the time he was re-sentenced. These claims are moot. As explained in the preceding section, we are directing the district court to impose concurrent sentences for Lampley's offenses of DUI and breath-test refusal. That is, we are directing the district court to impose a sentence that does not increase Lampley's composite time to serve.

*Conclusion*

Lampley's convictions for driving under the influence and refusing to submit to a breath test are AFFIRMED. Lampley's conviction for driving while his license was suspended is REVERSED. Further, we direct the district court to MODIFY Lampley's sentences for DUI and breath-test refusal by making the 60–day time-to-serve portions of the two sentences concurrent.